**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WES NEWMAN, *individually and on behalf of all others similarly situated*, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:22-cv-04845 |
| v. | ) ) ) | Judge Elaine Bucklo |
| BENEFYTT TECHNOLOGIES, INC. f/k/a HEALTH INSURANCE INNOVATIONS, INC., TOGETHERHEALTH INSURANCE, LLC, DAYLIGHT BETA PARENT CORPORATION, and MADISON DEARBORN PARTNERS, LLC, | ) ) ) ) ) ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendant. | ) ) | |

**MADISON DEARBORN PARTNERS' REPLY
IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, STAY**

Mark S. Eisen, Esq.
meisen@beneschlaw.com
Paul A. Del Aguila, Esq.
pdelaguila@beneschlaw.com
Jamie N. Ward, Esq.
jward@beneschlaw.com
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: (312) 212-4949
Facsimile: (312) 767-9192

*Counsel for Madison Dearborn Partners*

## TABLE OF CONTENT

Page

PRELIMINARY STATEMENT ................................................................................ 1

I.     PLAINTIFF OFFERS NO COLORABLE BASIS TO ENGAGE IN DUPLICATIVE AND WASTEFUL LITIGATION. ......................................... 3

II.    PLAINTIFF'S TELEMARKETING CLAIMS ARE ENTIRELY UNSUPPORTED. ......................................................................................... 4

     A.     Plaintiff's Vicarious Liability Theory Is Spurious. ..................................... 4

     B.     Plaintiff's TCPA Claim Is Missing Fundamental Allegations. ........................................................................................... 5

         i.     Plaintiff does not allege any facts to support a do-not-call request. ............................................................................ 5

         ii.     Plaintiff's IDNC policy claim is clearly deficient. ......................... 7

     C.     Plaintiff, an Illinois Resident, Cannot Stretch the Application of Florida Law. .................................................................... 9

         i.     Plaintiff's conclusory Florida allegations must be disregarded. .................................................................................. 9

         ii.     That two defendants are located in Florida does not alter the outcome. ............................................................................ 10

         iii.     Plaintiff interpretation of the FTSA is plainly unsupported. .................................................................................. 12

III.   PLAINTIFF FAILS TO ALLEGE FRAUDULENT TRANSFER AGAINST MDP. ................................................................................. 15

     A.     Plaintiff's Fraudulent Transfer Claim Belongs to the Bankruptcy Estate. ....................................................................... 15

     B.     Plaintiff Cannot Amend His Complaint Via His Opposition Brief. ......................................................................................... 16

     C.     MDP Did Not Receive Any Transfer From Benefytt in Connection with the August 2020 Acquisition. ...................................... 16

     D.     Plaintiff's New Fraudulent Transfer Theories Are Meritless. ...................................................................................... 18

## TABLE OF CONTENT

                                                                                  **Page**

    i.    The "collapsing doctrine" does not provide a theory
        of liability. .................................................................................... 18

    ii.    Plaintiff cannot allege a fraudulent transfer based on
        the conclusory (and incorrect) use of the LBO label. .................. 19

    iii.    Hypothetical dividends do not provide a basis for a
         fraudulent transfer claim against MDP. ........................................ 21

    iv.    Plaintiff fails to allege post-August 2020 debt as
         fraudulent transfers. ....................................................................... 22

    E.    Plaintiff Fails to Plausibly Allege Claims of Actual or
       Constructive Fraud. ............................................................................... 22

    F.    Plaintiff's Alleged Fraudulent Transfer Remedies as to
       MDP Are Frivolous ................................................................................ 23

CONCLUSION ................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
683 F.3d 328 (7th Cir. 2012) ...................................................6

*Allen v. Oakbrook Sec. Corp.*,
763 So. 2d 1099 (Fla. 4th DCA 1999) ...........................................10, 11

*Bailey v. Domino's Pizza, LLC*,
867 F. Supp. 2d 835 (E.D. La. 2012) ...........................................5, 8

*Bank of Am. v. WS Mgmt., Inc.*,
2015 IL App (1st) 132551...........................................24

*In re Benefytt Technologies, Inc.*,
No. 23-90566 (Bankr. S.D. Tex.)...........................................1

*Bilek v. National Congress of Employers, Inc., et al.*,
No. 18-cv-3083 (N.D. Ill.) ...........................................3, 6, 8

*Boyer v. Crown Stock Distribution, Inc.*,
587 F.3d 787 (7th Cir. 2009) ...........................................19

*Call One Inc. v. Berkley Ins. Co.*,
No. 21-cv-00466, 2023 WL 1863048 (N.D. Ill. Feb. 9, 2023) ...................................................7

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984) ...........................................16

*In re Chase & Sanborn Corp.*,
813 F.2d 1177 (11th Cir. 1987) ...........................................21

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...........................................25

*Cooley v. First Data Merch. Servs., LLC*,
No. 19-cv-1185, 2020 WL 13526633 (N.D. Ga. Feb. 7, 2020)...................................................5

*Cordoba v. DIRECTV*,
942 F.3d 1259 (11th Cir. 2019) ...........................................9

*Firstar Bank, N.A. v. Faul Chevrolet, Inc.*,
249 F. Supp. 2d 1029 (N.D. Ill. 2003) ...........................................23

*Freeman v. MAM USA Corp.*,
    528 F. Supp. 3d 849 (N.D. Ill. 2021) ............................................................25

*In re GenTek Inc.*,
    328 B.R. 423 (Bankr. D. Del. 2005) ..............................................................15

*In re Geo Contractors, Inc.*,
    No. 00-A-00556, 2000 WL 1800593 (Bankr. N.D. Ill. Dec. 5, 2000) ....................16

*Gonsalves v. Infosys Techs., LTD.*,
    No. 09-cv-04112, 2010 WL 1854146 (N.D. Cal. May 6, 2010)..........................10

*Grochocinski v. Schlossberg*,
    402 B.R. 825 (N.D. Ill. 2009) .......................................................................24

*Ham v. Portfolio Recovery Assocs., LLC*,
    308 So. 3d 942 (Fla. 2020)............................................................................12

*HBE Leasing Corp. v. Frank*,
    48 F.3d 623 (2d Cir. 1995)............................................................................19

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989) ......................................................................................14

*Hossfeld v. Am. Fin. Sec. Life Ins. Co.*,
    544 F. Supp. 3d 1323 (S.D. Fla. 2021) ............................................................9

*Hossfeld v. American Financial Security Life Insurance Co.*,
    No. 19-cv-60597 (S.D. Fla.) ...........................................................................3

*Humphrey v. United Healthcare Servs.*,
    No. 14-cv-1157, 2014 WL 3511498 (N.D. Ill. July 16, 2014) ...............................3

*Katz v. Liberty Power Corp., LLC*,
    No. 18-cv-10506-ADB, 2019 WL 4645524 (D. Mass. Sept. 24, 2019) .................16

*Kohn Law Grp. v. Auto Parts Mfg. Mississippi*,
    787 F.3d 1237 (9th Cir. 2015) .........................................................................3

*Lapham-Hickey Steel Corp. v. A.G. Edwards Tr. Co.*,
    No. 03-cv-3282, 2003 WL 22324877 (N.D. Ill. Oct. 8, 2003) ...........................6, 8

*Legato Vapors, LLC v. Cook*,
    847 F.3d 825 (7th Cir. 2017*)* ........................................................................14

*Mann v. LSQ Funding Group, L.C.*,
    71 F.4th 640 (7th Cir. Jun. 22, 2023).............................................................20

*Moore v. American Service Insurance Agency*,
 No. 20-cv-06206 (N.D. Ill.) ...................................................................................3, 9

*Moore v. Pro Custom Solar*
 No. 21-4395, 2022 WL 1092186 (N.D. Ill. Apr. 12, 2022) ........................................9

*Morrison v. Nat'l Australia Bank Ltd.*,
 561 U.S. 247 (2010).............................................................................................10, 11

*In re MortgageAmerica Corp.*,
 714 F.2d 1266 (5th Cir. 1983) ...................................................................................15

*Neshewat v. Salem*,
 365 F. Supp. 2d 508 (S.D.N.Y. 2005)........................................................................24

*Nicholson v. Nationstar Mortg. of Delaware*,
 No. 17-1373, 2018 WL 3344408 (N.D. Ill. July 6, 2018) ...........................................3

*Robertson v. Republic of Nicaragua*,
 No. 17-cv-00852, 2017 WL 4469149 (N.D. Cal. Oct. 6, 2017) ................................10

*Scalercio-Isenberg v. Credit Suisse Grp.*,
 No. 22-cv-2705, 2023 WL 2263577 (D.N.J. Feb. 28, 2023) ....................................10

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016)...................................................................................................25

*Thomas v. Taco Bell Corp.*,
 582 F. App'x 678 (9th Cir. 2014) ................................................................................4

*TransUnion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021)...............................................................................................25

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*,
 603 F. Supp. 3d 1334 (S.D. Fla. 2022) ..................................................2, 12, 13, 14

*Vessal v. Alarm.com*,
 No. 17-cv-2188, 2017 WL 4682736 (N.D. Ill. Oct. 18, 2017) ....................................5

**Statutes & Regulations**

740 ILCS 160/2(g) .........................................................................................................23

740 ILCS 160/5.................................................................................................17, 22, 23

740 ILCS 160/6.................................................................................................17, 22, 23

740 ILCS 160/8.................................................................................................17, 24, 25

740 ILCS 160/9 ..................................................................................................................19, 24

47 C.F.R. § 64.1200(d) ......................................................................................................1, 5, 7

11 U.S.C. § 550(a) .....................................................................................................................24

47 U.S.C. § 227(c)(5)..................................................................................................................5

2021 Fla. Sess. Law Serv. Ch. 2021-185 (C.S.S.B. 1120) .........................................................12

Fla. Stat. § 501.059 ........................................................................................................... *passim*

## PRELIMINARY STATEMENT

On May 23, 2023, Benefytt Technologies, Inc. ("Benefytt") and certain of its affiliates filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas. These petitions include three of the four defendants in this case, Benefytt, TogetherHealth Insurance, LLC and Daylight Beta Parent Corporation (collectively the "Debtor Defendants"). *See In re Benefytt Technologies, Inc.*, Case No. 23-90566 (Bankr. S.D. Tex.) (the lead case). Plaintiff seeks to continue this case as it relates to Madison Dearborn Partners, LLC ("MDP"), which is the only party able to file the instant reply brief. This reply brief is thus filed solely on behalf of MDP.

This is the fourth pending TCPA class action Plaintiff's counsel brought against Benefytt. Plaintiff has alleged he is a putative class member in at least one first-filed action. This case is a misguided effort to use the *in terrorem* effect of a class action to extract money out of MDP, the adviser to investment funds ("MDP Funds") that are indirect shareholders of Benefytt[1]—far removed from any alleged wrongful conduct—using grossly false, unsupported and incendiary accusations.[2] This case is meritless and should be dismissed.

First, Plaintiff builds his TCPA claim out of smoke and mirrors. Plaintiff brings a claim under the TCPA's internal do-not-call ("IDNC") regulations, found at 47 C.F.R. § 64.1200(d). Plaintiff contends he made an IDNC request in July of 2019 (more than a year prior to the alleged MDP Funds acquisition) to an entity known as Health Advisors of America—a non-party that is not alleged to be affiliated with Benefytt. Plaintiff fails entirely to allege any facts to support that

---

[1]     *See* Tender Offer Statement (July 24, 2020) at EX-99.D.5 (equity financing commitment letter from MDP Funds).

[2]     MDP reserves its right to seek appropriate remedies for Plaintiff's sanctionable accusation that MDP is engaged in a fraudulent transfer and orchestrated a plan predating the MDP Funds investment to push Benefytt into bankruptcy. This frivolous accusation defies all common sense.

(i) he ever made an IDNC request to any Defendant (much less MDP) or (ii) any Defendant has any relationship with Health Advisors of America. This omission is likewise fatal to Plaintiff's contention that Benefytt (or any other Defendant) lacked appropriate IDNC policies. Plaintiff has no standing to bring such a claim without having made an IDNC request. Plaintiff's attempt to remedy these omissions by attempting to add allegations in his opposition brief is improper—belated citations to purported evidence from another case is not a substitute for factual allegations.

Second, Plaintiff cannot bring claims against MDP under Florida law. Plaintiff attempts to bring four claims under the Florida Telemarketing Sales Act ("FTSA"). Plaintiff ignores that the FTSA is limited in reach to (i) calls made from a location in Florida and (ii) calls to Florida residents. *See Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1346 (S.D. Fla. 2022). Plaintiff satisfies neither element, and fails to allege MDP is doing business in Florida so as to qualify as a telephone solicitor under the FTSA. Plaintiff is an Illinois resident suing MDP (an Illinois headquartered company) over calls received in Illinois. Plaintiff provides no authority to suggest that he can pursue claims under Florida law in such a circumstance.

Third, Plaintiff's fraudulent transfer claim fails for myriad reasons. As a threshold matter, this claim belongs to the bankruptcy estate. Plaintiff's effort to continue the pursuit of this claim is a direct violation of the automatic stay. As a more substantive matter, the FAC utterly fails to provide any factual support for a fraudulent transfer claim against MDP. Plaintiff *still* does not so much as allege a transfer of any kind to MDP, and Plaintiff's opposition brief confirms no such transfer occurred. Plaintiff's use of conclusory buzzwords like "collapsing doctrine" and "leveraged buyout" are not only wrong, they fail to create a fraudulent transfer. Plaintiff's attempt to amend his Complaint via his opposition brief to muddy the waters of his fraudulent transfer claim is likewise meritless. Plaintiff's fraudulent transfer claim against MDP should be dismissed.

## I. PLAINTIFF OFFERS NO COLORABLE BASIS TO ENGAGE IN DUPLICATIVE AND WASTEFUL LITIGATION.

Plaintiff's counsel has **four** pending TCPA class actions against Benefytt. *See Bilek v. National Congress of Employers, Inc., et al*., No. 18-cv-3083, Dkt. 116 (N.D. Ill.); *Hossfeld v. American Financial Security Life Insurance Co.*, 19-cv-60597, Dkt. 1 (S.D. Fla.); *Moore v. American Service Insurance Agency*, No. 20-cv-06206, Dkt. 1. (N.D. Ill.). Plaintiff offers no explanation for this duplicative and wasteful litigation

While Plaintiff attacks the adherence to the first-to-file rule, there is no question this Court has the authority to yield to earlier filed cases "in the interest of judicial economy." *Humphrey v. United Healthcare Servs*., No. 14-1157, 2014 WL 3511498 at *2 (N.D. Ill. July 16, 2014). Plaintiff does not dispute the overlap and similarity between this case and the earlier filed *Bilek* and *Moore* actions. (*See* Dkt. 27 at 7-9.) Instead, Plaintiff focuses on the fact that he named an additional defendant—MDP, which Plaintiff claims acquired Benefytt—that was not named in his counsel's prior Benefytt cases. The addition of MDP does not alter the outcome. *See Nicholson v. Nationstar Mortg. of Delaware*, No. 17-1373, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018) (noting only substantial overlap in parties and issues is needed for the first-to-file rule to apply). Plaintiff named MDP simply because he believes it has money. (Dkt. 93 at 13 [referring to MDP as "a pecunious private equity company"].) It would be incongruous with the intent of the first-to-file rule to allow it to be thwarted by simply adding another party. *Cf. Kohn Law Grp. v. Auto Parts Mfg. Mississippi*, 787 F.3d 1237, 1240 (9th Cir. 2015) ("A contrary holding could allow a party such as Kohn Law to skirt the first-to-file rule merely by omitting one party from a second lawsuit.").[3]

---

[3]  Plaintiff added MDP solely on a theory of alleged vicarious liability for the telemarketing claims. Plaintiff brings **no** direct telemarketing claims against MDP (nor could he), nor does he allege any kind of joint tortfeasor theory. (*See, e.g.*, Dkt. 22 ¶¶ 24, 108, 112, 113.) The crux of Plaintiff's suit rests on the alleged conduct of Benefytt.

As a final matter, Plaintiff suggests, without any analysis, that the recent fact of the Debtor Defendants' bankruptcy filing alters the first-to-file equation. (Dkt. 93 at 13.) Plaintiff provides no authority for his view. The fact that the Debtor Defendants have filed for bankruptcy does not alter the fundamental purpose of the first-to-file rule—judicial economy. Judicial efficiency remains well-served here by application of the first-to-file rule to dismiss or stay this case.

## II. PLAINTIFF'S TELEMARKETING CLAIMS ARE ENTIRELY UNSUPPORTED.

### A. Plaintiff's Vicarious Liability Theory Is Spurious.

Plaintiff begins his brief with a footnote indicating Defendants did not challenge Plaintiff's vicarious liability allegations. (Dkt. 93 at 2 n.1, 20 n.22.) To be clear, MDP takes great exception with Plaintiff's vicarious liability theory, a theory premised on wildly inaccurate accusations.

MDP is an investment adviser that dates its history back nearly 40 years (it originally was part of First Chicago Bank). *See* https://www.mdcp.com/about. It has a sterling reputation and has invested in some of the country's most well-regarded brands. *See* https://www.mdcp.com/portfolio. Plaintiff is seeking to hold an investment adviser vicariously liable for the actions of an independent standalone company whose shareholders include investment funds managed by MDP. Plaintiff offers not a single case supporting a similar theory in a TCPA action. *See, e.g.*, *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014) (detailing high standard for vicarious liability in TCPA context).[4]

Even worse, Plaintiff is seeking to hold the *Debtor Defendants* themselves vicariously liable for the actions of third party callers. (*See* Dkt. 22 ¶¶ 71, 104.) MDP is *at least* three levels and two theories of vicarious liability removed from the actual calls at issue. Plaintiff's theory in

---

[4]    In this Court's recent June 26, 2023 Order, this Court cited to two vicarious liability cases involving Dish Network. (*See* Dkt. 107 at 5.) The facts of the instant suit are inapposite. The theory at hand would be more akin to attempting to assert vicarious liability against a Dish Network shareholder for the alleged actions of an alleged Dish Network third party vendor.

this regard also directly contradicts Plaintiff's recent argument that he is pursuing a direct liability or joint tortfeasor liability theory against MDP. (*See* Dkt. 101 at 3-5); *Cooley v. First Data Merch. Servs., LLC*, No. 19-1185, 2020 WL 13526633, at *2 (N.D. Ga. Feb. 7, 2020) ("[T]here are no allegations in the Plaintiffs' Complaint that First Data is a joint tortfeasor. Rather, the Plaintiffs allege liability on the part of First Data based on a theory of vicarious liability."). Plaintiff does not allege and does not provide any support for a direct liability or joint tortfeasor theory in his opposition brief, nor could he. *See, e.g.*, *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at *2 (N.D. Ill. Oct. 18, 2017) ("Direct liability under the TCPA, however, applies only to entities that 'initiate' the telemarketing calls."). Plaintiff does not contend that MDP "physically place[d]" the calls at issue. *Id.* It is clear that Plaintiff is pursuing only a theory of ratification against MDP. (*See* Dkt. 22 ¶¶ 23, 108, 112-13.) Should this case continue, MDP intends to challenge Plaintiff's spurious vicarious liability allegations at the appropriate stage, and to seek appropriate remedies.

### B. Plaintiff's TCPA Claim Is Missing Fundamental Allegations.

#### i. *Plaintiff does not allege any facts to support a do-not-call request.*

Plaintiff brings a single claim under the TCPA, alleging the violation of the TCPA's IDNC regulations. *See* 47 C.F.R. § 64.1200(d). These regulations impose certain requirements for respecting IDNC requests and maintaining an IDNC list. *Id.* Plaintiff pursues this claim through 47 U.S.C. § 227(c)(5). A predicate to alleging an IDNC claim is Plaintiff must have actually made an IDNC request to Defendants. *See, e.g.*, *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012) ("Plaintiff does not allege that he made any such affirmative request to Defendant, and therefore it is not clear how the provision was violated."). Plaintiff does not contest that such an allegation is necessary, but he fails to provide any facts to support such an allegation.

Plaintiff's only allegation in this respect is that he received a call on July 17, 2019 (four years ago and prior to the alleged MDP Funds' investment in Benefytt in August of 2020) from an

entity called Health Advisors of America, during which he "indicated a desire to not receive subsequent telemarketing calls." (Dkt. 22 ¶¶ 42, 43.) Plaintiff provides no factual allegations to connect any Defendant to this call other than to say in conclusory form that the call was "made on behalf of Benefytt." (*Id.* ¶ 42.) Plaintiff provides no facts to support this conclusion—not the phone number that made the call, nor even the contents of the call. Plaintiff provides no factual allegations as to who "Health Advisors of America" ("HAA") is or how it is connected to any of the Defendants here. Plaintiff has not named HAA as a defendant here, and his counsel voluntarily dismissed HAA from the *Bilek* action. *See* No. 18-cv-3082, Dkt. 116. The allegation that the July 17, 2019 call was made on behalf of Benefytt is merely an apparent supposition.[5] Plaintiff cannot support a lawsuit based on rote conjecture—he must provide factual support for his contentions.

Plaintiff's conclusory allegations do not survive *Iqbal / Twombly*, and similar conclusory assertions are routinely rejected in TCPA cases. (*See* Dkt. 27 at 12-13 [summarizing pertinent TCPA authority].) Plaintiff's only response to this issue is to turn to *deposition testimony* from the first-filed *Bilek* case, and to indicate he has more evidence "if it would assist the Court." (Dkt. 93 at 14-15.) The *Bilek* case was filed before the MDP Funds investment and the allegations relate to activities that pre-date the investment. None of the cited testimony pertains to MDP. Further, even if this testimony or "evidence" was pertinent to the alleged call from Health Advisors of American in 2019, this information is not in Plaintiff's FAC. Plaintiff cannot use his opposition brief to amend his complaint and attempt to fill in missing allegations. *See, e.g.*, *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012); *Lapham-Hickey Steel Corp. v. A.G. Edwards*

---

[5]     More than just a supposition, this contention appears to be false. Given Plaintiff's frequent reliance on evidence in the *Bilek* action, it should be noted the *Bilek* evidence renders Plaintiff's allegation impossible. Plaintiff's counsel submitted evidence in *Bilek* that Health Advisors of America **was not in business in July of 2019**. (*See Bilek*, No. 18-cv-03083, Dkt. 489-13 at 53:9-17; 63:17-21 [Health Advisors of America testifying it stopped doing business in May of 2019].)

*Tr. Co.*, No. 03 C 3282, 2003 WL 22324877, at *3 (N.D. Ill. Oct. 8, 2003) (Bucklo, J.).[6] Plaintiff's FAC lacks any factual allegation tying HAA to Benefytt (or any Defendant), particularly as it relates to the 2019 call. At best, Plaintiff provides—via footnote—an offhand citation to another footnote in an FCC notice, without any context or explanation, endeavoring to show a connection between HAA and Benefytt. (Dkt. 22 ¶ 42 n.3.) Plaintiff cannot wait until his opposition brief to try to rectify his pleading problems.[7]

Plaintiff's TCPA claim cannot survive without factual support for the notion that he actually made an IDNC request to Benefytt. Plaintiff's conclusory assertions do not suffice, and Plaintiff's attempt to add allegations by way of his opposition brief is meritless.[8]

### ii. Plaintiff's IDNC policy claim is clearly deficient.

Plaintiff's IDNC class is limited solely to those that actually made IDNC requests (as such, a request is required to have a claim). (*See* Dkt. 22 ¶ 122.) Nevertheless, Plaintiff also contends he is bringing a claim for the alleged failure to maintain adequate IDNC policies and procedures. (*See* Dkt. 93 at 15-17.) As detailed in MDP's Motion to Dismiss, this claim fails for two reasons.

First, this claim is also without factual support. Plaintiff simply recites certain elements of the FCC's IDNC regulations at 47 C.F.R. § 64.1200(d), and claims they were violated. (Dkt 22 ¶¶

---

[6] Plaintiff suggests he can add "additional facts" consistent with his FAC through his opposition brief. (Dkt. 93 at 12.) Plaintiff seeks to drive a truck through this limited exception. *See Call One Inc. v. Berkley Ins. Co.*, No. 21-CV-00466, 2023 WL 1863048, at *4 n.1 (N.D. Ill. Feb. 9, 2023). Plaintiff is attempting to engage in litigation by ambush. Plaintiff's tactic of waiting until an opposition brief to introduce new allegations cannot be countenanced.

[7] Plaintiff devotes a page of his brief contending that he need not have made an IDNC request directly to Benefytt, as opposed to a vendor of Benefytt. (Dkt. 93 at 14.) Even if this were true (which has yet to be litigated), it is beside the point. Plaintiff does not, as a threshold matter, allege *any* factual support for the notion that he made an IDNC request to even a Benefytt vendor.

[8] Plaintiff brings a substantively similar IDNC claim under Florida state law, Fla. Stat. § 501.059(5). To the extent this Court finds Plaintiff can at this stage pursue claims under Florida law, Plaintiff's Florida IDNC claim would fail for the same reason as his federal IDNC claim.

86, 115, 139-42.) Plaintiff states: "No Defendant has a do-not-call policy that comports with the requirements of the TCPA." (*Id.* ¶ 86.) Plaintiff then describes "Defendants' policies, practices and procedures" as "insufficient." (*Id.* ¶ 115; *see also id.* ¶ 139-42.) These are not facts. Indeed, Plaintiff does not even specify which defendant's policies and procedures he is suing over.

In response to the Motion to Dismiss, Plaintiff again relies on his conclusory allegations. For example, Plaintiff cites his allegation "Benefytt did not have a written do-not-call policy or complete do-not-call list." (Dkt. 93 at 16 [citing Dkt. 22 ¶ 20]; *id.* [citing Dkt. 22 ¶¶ 99, 139].) Further, Plaintiff cites to his conclusory statements that Benefytt is not coordinating internal do-not-call lists. (*Id.* at 17 [citing Dkt. 22 ¶¶ 105, 115].) Plaintiff also cites to an FTC action, but fails to allege how the FTC action pertains to the claim at hand. (*See id.* [citing Dkt. 22 ¶ 46].) And Plaintiff points to HAA, but fails to allege any facts suggesting the relationship between HAA and any Defendant pertinent to this case. (*Id.*) Plaintiff's conclusory assertions regarding the alleged failure to have adequate policies are plainly insufficient. *See Bailey*, 867 F. Supp. 2d at 842. Plaintiff does not even address his boilerplate allegations relating to MDP. (*See* Dkt. 22 ¶¶ 86, 115, 130-142.) Plaintiff includes not a single factual allegation in this respect relating to *MDP*.

Recognizing the absence of factual allegations, Plaintiff inserts for the first time in his opposition citations to deposition testimony from the *Bilek* action. (*See* Dkt. 93 at 16 n.13, 14, 15.) Again, this practice of inserting new allegations by way of an opposition brief is improper. *See Lapham-Hickey Steel Corp.*, 2003 WL 22324877, at *3. In any event, this tactic does little to remedy the problem particularly as it relates to MDP, who was not a part of the *Bilek* action.

Second, because Plaintiff fails to allege an IDNC request, he lacks standing to pursue a claim over the alleged lack of adequate policies. Plaintiff declines to address standing, apparently conceding that without an IDNC request he lacks standing to pursue a policy-related IDNC claim.

MDP summarized the pertinent case law in its Motion to Dismiss. (*See* Dkt. 27 at 16-17.) In short, where no IDNC request is actually made, no purported "harm" can be attributable to the alleged statutory violation of failing to maintain an adequate policy. *See, e.g.*, *Cordoba v. DIRECTV*, 942 F.3d 1259, 1272 (11th Cir. 2019) ("There's no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by class members who never said to Telecel they didn't want to be called again. These plaintiffs therefore would lack Article III standing to sue."). Plaintiff's counsel has already had a similar claim against Benefytt (f/k/a Health Insurance Innovations) dismissed for lack of standing. *See* *Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, 544 F. Supp. 3d 1323, 1332 (S.D. Fla. 2021) ("Plaintiff lacks standing to assert a claim based on HII's failure to maintain and honor an internal do-not-call list."). Plaintiff's reliance on and citation to *Moore v. Pro Custom Solar*, (Dkt. 93 at 17), is misplaced because the plaintiff in *Moore* actually alleged support for a do-not-call request, contrary to Plaintiff here. *See* No. 21-4395, 2022 WL 1092186, at *1, 6 (N.D. Ill. Apr. 12, 2022).

Plaintiff thus not only fails to adequately allege that any particular Defendant (much less all) lacked sufficient internal do-not-call policies, he lacks standing to pursue a policy-related claim in any event given that he failed to adequately allege making an internal do-not-call request.

### C. Plaintiff, an Illinois Resident, Cannot Stretch the Application of Florida Law.

Plaintiff is an Illinois resident who allegedly received calls in Illinois. Plaintiff alleges that "a substantial portion of the events giving rise" to his claims occurred in Illinois. (Dkt. 22 ¶¶ 5, 41.) Nevertheless, Plaintiff seeks to bring four claims under the Florida Telemarketing Sales Act, Fla. Stat. § 501.059, *et seq*. Plaintiff's bases for attempting to pursue Florida claims are mistaken.

#### i.    *Plaintiff's conclusory Florida allegations must be disregarded.*

First, Plaintiff contends he "does allege that the calls originated in Florida." (Dkt. 93 at 18.) This is false. What Plaintiff does is make conclusory references to the State of Florida. By way of

example, Plaintiff states that Defendants "conducted the telemarketing at issue in this lawsuit through Benefytt at its headquarters that are located in Tampa, Florida." (Dkt. 22 ¶¶ 6, 7, 13, 16, 30-34.) Throughout Plaintiff's FAC, he repeats the exact same phrase: "The calls to Plaintiff . . . either originated in Florida and/or are the result of Defendants' conscious deliberation, and request that the calls be made from Florida." (*Id.* 135, 149, 159, 164.)

These are not *factual* allegations, they are conclusory assertions and should be disregarded. *See, e.g.*, *Robertson v. Republic of Nicaragua*, No. 17-cv-00852, 2017 WL 4469149, at *3 (N.D. Cal. Oct. 6, 2017), *aff'd*, 719 F. App'x 705 (9th Cir. 2018) ("This conclusory allegation is insufficient to displace the presumption against extraterritorial application . . . .") (internal quotations and citation omitted); *Scalercio-Isenberg v. Credit Suisse Grp.*, No. CV222705, 2023 WL 2263577, at *7 n.9 (D.N.J. Feb. 28, 2023) (stating, regarding an attempt to tie the conduct to New York, "[t]hat conclusory claim, however, is factually vapid."); *Gonsalves v. Infosys Techs., LTD.*, No. C 09-04112, 2010 WL 1854146, at *6 (N.D. Cal. May 6, 2010) (disregarding conclusory attempt to tie claim to California). Plaintiff's conclusory assertions should be disregarded.

### ii. That two defendants are located in Florida does not alter the outcome.

Second, the mere fact that two Defendants are in Florida does not alter the outcome, particularly as it relates to MDP—an Illinois headquartered company. As one Florida court quoted, "[t]here is, of course, a presumption that a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted." *Allen v. Oakbrook Sec. Corp.*, 763 So. 2d 1099, 1101 (Fla. 4th DCA 1999); *see also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.").

Plaintiff suggests this presumption as to MDP is overcome because defendants Benefytt and TogetherHealth are based in Florida. (Dkt. 93 at 18.) It is not. In its Motion to Dismiss, MDP discussed the *Allen v. Oakbrook* case, which Plaintiff neglects. *Allen* involved a case under a

Florida securities law. *See* 763 So. 2d at 1100. The plaintiffs brought suit relating to the sale of securities *outside of Florida*, but where "the securities consisted of stock in a company which was incorporated in Florida and had its principal place of business in Florida." *Id.* at 1100-01. The appellate court held Florida law ***did not*** apply to conduct occurring outside Florida. *Id.* at 1101.

Analogously, the Supreme Court's decision in *Morrison v. National Australia Bank* is instructive. *See* 561 U.S. at 247. *Morrison* pertained to an Australian bank that had purchased a mortgage-servicing company in Florida. *Id.* at 251. A securities issue arose as a result of certain statements and conduct engaged in the U.S. and abroad, and suit was filed by Australian plaintiffs in the Southern District of New York under the Securities Exchange Act. *Id.* at 252. The Supreme Court evaluated the extraterritorial application of § 10(B) of the Act. *Id.* at 255. The Court started with the presumption against extraterritorial application of U.S. law. *Id.* The Court held that because § 10(b) "lacks[] a clear statement of extraterritorial effect," it had none. *Id.* at 265.

Importantly here, the petitioners in *Morrison* argued that "Florida is where [the mortgage-servicing company] and its senior executives engaged in the deceptive conduct" at issue. *Id.* at 266. The Court rejected this argument, stating:

> [I]t is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States. ***But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case***.

*Id.* (emphasis added). The Court turned to the focus of the statute—the "purchases and sale of securities in the United States"—and rejected the extraterritorial application because the case did not involve securities listed on a domestic exchange. *Id.* at 266-67, 273.

Plaintiff's focus on the simple fact that Benefytt and TogetherHealth are located in Florida is misplaced. As is Plaintiff's contention that (i) HAA was located in Florida and (ii) he spoke with someone during a subsequent call (not at issue) who mentioned TogetherHealth. (Dkt. 93 at 18-

11

19.) As to the first point, Plaintiff fails to allege a connection between HAA and any Defendant, particularly MDP. Further, Plaintiff is not suing over the single 2019 call he alleged he received from HAA. (Dkt. 22 ¶¶ 42, 48, 51.) Nor could he—there was no private right of action under the FTSA until July of *2021*. *See* 2021 Fla. Sess. Law Serv. Ch. 2021-185 (C.S.S.B. 1120). As to the second point, Plaintiff does not contend the individual with whom he spoke was located in Florida, or that this individual initiated any call over which Plaintiff is suing. (Dkt. 22 ¶ 71.)

The only relevant focus for the FTSA claim is the two calls at issue—the calls to Plaintiff's cellular telephone on October 26 and 27, 2021. (*Id.* ¶¶ 48, 51, 62 n.4.) Plaintiff fails to allege these calls were placed from Florida. Plaintiff fails to allege any facts to suggest MDP took any relevant action connected to Florida. The FTSA claims asserted against MDP must be dismissed.

### iii.    *Plaintiff interpretation of the FTSA is plainly unsupported.*

<u>Third</u>, Plaintiff's attempt to broadly construe the FTSA to encompass the calls at issue is fundamentally misguided. The FTSA contains *no* indicia of extraterritorial application. *See, e.g.*, *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1346 (S.D. Fla. 2022). It contains, on the other hand, myriad contrary indicia. (*See* Dkt. 27 at 18.)

 Plaintiff focuses exclusively on one word in the definition of "Doing business in this state." Fla. Stat. § 501.059(1)(e). "Doing business in this state" is defined to mean: "businesses that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida." *Id.* Plaintiff, conceding he is not a consumer in Florida, latches onto the first element, and then zeroes in on the word "conduct" in an effort to broadly construe the statute's application to "conduct" beyond the placement of a phone call from the state of Florida. (*Id.* at 19-22.) This theory is absurd on its face.

Plaintiff cannot isolate a singular statutory word; the word "conduct" must be interpreted in *context*. *See, e.g.*, *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020). In

context, the phrase is "businesses that conduct telephonic sales calls from a location in Florida . . . ." Fla. Stat. § 501.059(1)(e). Plaintiff does not offer an interpretation of "conduct", but seems to imply that it covers action beyond originating the call. (Dkt. 93 at 19-20.) Plaintiff is mistaken. In context, it is clear that this phrase refers to calls placed from a location in Florida. As much is evident from the text itself and the only court to interpret the interstate application of the FTSA. *See, e.g.*, *Turizo*, 603 F. Supp. 3d at 1347 (indicating in a parenthetical that this definition "limit[s] the FTSA's scope to ***calls from Florida*** or to consumers in Florida.") (emphasis added). Were Plaintiff's expansive interpretation of "conduct" to hold true, the term "location in Florida" would impose little limitation and carry little meaning. Indeed, were Plaintiff's interpretation correct, all entities within the chain of placing a telephone call would be brought under the auspices of the FTSA so long as one had a presence in Florida. (*See* Dkt. 93 at 19.)

To the extent Plaintiff believes that simply reciting the term "conduct" in conclusory fashion throughout his FAC is sufficient to support a claim under the FTSA, he is again mistaken. *See* *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). Plaintiff's uses the term "conduct" as a conclusory attempt to satisfy the "Doing business in this state" standard. (*See* Dkt. 22 ¶¶ 6, 7, 13, 30-34, 135, 149, 159, 164.) Plaintiff's assertion is also contradicted by his own allegations. Plaintiff specifically notes he is seeking to hold all Defendants *vicariously liable*, and concedes that *a third party* from an unknown location placed the calls at issue. (*Id.* at 20 n.22; *see also* Dkt. 22 ¶¶ 48, 51, 52, 71.) Plaintiff does not even allege the involvement of any Defendant until multiple steps after the calls at issue. (*See* Dkt. 22 ¶ 71.)

As it pertains to MDP specifically, Plaintiff seeks to apply the FTSA to an Illinois headquartered entity at least *three* levels (and two vicarious liability theories) removed from the call at issue. The only purported connection MDP has to Florida is that Benefytt and

TogetherHealth are allegedly located in Florida. Plaintiff thus portrays MDP as in an "affiliate" relationship under the FTSA's definition of "Telephone solicitor." (*See* Dkt. 22 ¶ 30.) Plaintiff concedes that the FTSA applies generally to "telephone solicitors." (*Id.* ¶ 120.) It is clear, however, that MDP does not qualify as a "Telephone solicitor" under the FTSA, even if other co-defendants would. To qualify as a "Telephone solicitor" under the FTSA, MDP must itself be "doing business in this state" under the FTSA. Fla. Stat. § 501.059(1)(i).

The only court to evaluate this issue—an Illinois court in a case brought by Plaintiff's counsel—rejected the expansive view of the FTSA. In *Ailion v. Healthcare Solutions*, Judge Leinenweber held the FTSA's definition of "Telephone solicitor" requires that each such entity—even an "affiliate" under the statute—must be "doing business in this state" as defined under the FTSA. *See* No. 21 C 6231, 2023 WL 2333299, at *5 (N.D. Ill. Mar. 2, 2023) ("[A]ny affiliate would also have to be doing business in Florida," and dismissing FTSA claims against non-Florida entity). This principle would apply both to any entity that actually makes the call and even one that "causes to be made a telephonic sales call" under the FTSA. *See* Fla. Stat. § 501.059(1)(i). MDP is not alleged "to be doing business in Florida, meaning that [MDP] would not qualify as a telephone solicitor." *Id.* As a result, it is evident that the FTSA cannot be applied to MDP.[9]

Plaintiff concludes his analysis with the strawman argument that Defendants argued the FTSA was limited to Florida-to-Florida calls. (Dkt. 93 at 20-21.) MDP does not adopt this view, and this argument was not made in the Motion to Dismiss. MDP, pursuant to the plain language of the statute, contends it applies only "to calls from Florida or to consumers in Florida." *Turizo,*

---

[9]     Plaintiff's interpretation of the FTSA would also create significant Commerce Clause problems. *See, e.g., Legato Vapors, LLC v. Cook*, 847 F.3d 825, 830 (7th Cir. 2017)*; Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). This is exactly why the Florida court in *Turizo* adopted a narrowed view of the reach of the FTSA. *See Turizo*, 603 F. Supp. 3d at 1346-47. Plaintiff can offer no court, or event legislative history, adopting his expansive view.

603 F. Supp. 3d at 1347 (quoting parenthetical). It further applies to "telephone solicitors," which itself is limited to entities doing business in Florida. *See Ailion*, 2023 WL 2333299, at *5. Plaintiff thus cannot pursue an FTSA claim against MDP and such claims must be dismissed as to MDP.

*     *     *

Plaintiff seeks to bring claims under Florida law: (i) involving an Illinois Plaintiff, (ii) who allegedly received calls in Illinois, (iii) against MDP (an Illinois headquartered company), and who (iv) contends that "a substantial portion of the events giving rise" to this case took place in Illinois. Plaintiff cannot proceed under Florida state law. The FTSA does not apply to MDP.

## III. PLAINTIFF FAILS TO ALLEGE FRAUDULENT TRANSFER AGAINST MDP.

### A. Plaintiff's Fraudulent Transfer Claim Belongs to the Bankruptcy Estate.

At the outset, Plaintiff cannot pursue a fraudulent transfer claim because it necessarily belongs to the bankruptcy estate. It is clear "[a]n action under the Fraudulent Transfers Act is essentially one for property that properly belongs to the debtor and which the debtor has fraudulently transferred in an effort to put it out of the reach of creditors." *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983). To that end, "[t]he automatic stay under section 362(a) thus applies and prevents a creditor from continuing to pursue" this claim. *Id.* Fifth Circuit law is key because the bankruptcy is proceeding in the Southern District of Texas.

Counsel for the Debtor Defendants in the bankruptcy have already sent Plaintiff a cease and desist letter concerning Plaintiff's improper pursuit of a fraudulent transfer claim. (*See* Dkt. 104-1; *see also In re GenTek Inc.*, 328 B.R. 423, 429 (Bankr. D. Del. 2005) ("The California Plaintiffs overlook the fundamental bankruptcy principle that the right to pursue fraudulent transfer claims shifts to the debtor in possession upon the filing of a chapter 11 petition notwithstanding that, outside of bankruptcy, such claims belong solely to the creditors.")). Any effort to continue the pursuit of this claim in this Court would be a direct violation of the automatic stay.

15

**B.      Plaintiff Cannot Amend His Complaint Via His Opposition Brief.**

In moving to dismiss Plaintiff's fraudulent transfer claim, MDP noted that Plaintiff did not cite to any statute or subsection, provide any specific theory of fraudulent transfer, or so much as identify what state's law applies. *See In re Geo Contractors, Inc., No. 00-A-00556, 2000 WL 1800593, at *6 (Bankr. N.D. Ill. Dec. 5, 2000)* ("Further, the complaint does not specify under which portion of the UFTA the Trustee proceeds. . . . Neither the Court nor the Defendant should have to engage in a guessing game . . . ."). Plaintiff seeks to rectify that fundamental problem by devoting a significant portion of his opposition brief to rewriting his fraudulent transfer claim. Plaintiff now points to specific theories of fraudulent transfer and provides outside material that were not previously referenced. (*See* Dkt. 93 at 22, 26, 27, 30, 33, 34.) Plaintiff's FAC does not include the term "dividend"—not once. Plaintiff's opposition, however, devotes an entire subsection to allegedly improper dividends. (*See id.* at 28-32.) Plaintiff even turns to filings that postdate his FAC by some *six months* to help support his claim. (*See id.* at 32-35.)

This conduct is improper; Plaintiff cannot amend his FAC through his opposition. *See Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)* ("However, it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

**C.      MDP Did Not Receive Any Transfer From Benefytt in Connection with the August 2020 Acquisition.**

As MDP explained in the Motion to Dismiss, Plaintiff's fraudulent transfer claim fails for the fundamental reason that Plaintiff alleges no facts to suggest MDP was a transferee of Benefytt's property, the quintessential element of a fraudulent transfer. For that reason alone, Plaintiff's fraudulent transfer claim against MDP should be dismissed. *See, e.g., Katz v. Liberty Power Corp., LLC, No. 18-CV-10506-ADB, 2019 WL 4645524, at *9* (D. Mass. Sept. 24, 2019).

Plaintiff's claim as to MDP appears based on the conclusory assertion (rather, assumption) that MDP "quickly extract[ed] as much money and value" from Benefytt as it could. (*See* Dkt. 22 ¶¶ 180, 184; Dkt. 93 at 11.) Plaintiff identifies not a single factual allegation to suggest anything— any money or assets—was ever transferred from Benefytt to MDP. Public documents instead demonstrate the MDP Funds committed *nine figures* in cash in order to consummate the August 2020 acquisition of Benefytt. *See* Tender Offer Statement (July 24, 2020) at EX-99.D.5; *see also* SEC Schedule 14D-9 at p. 5. Even when considered with the benefit of Plaintiff's opposition brief, the FAC fails to identify *any* transfer from Benefytt to MDP of any kind, or any obligation incurred by Benefytt for the benefit of MDP in connection with the acquisition of Benefytt.

Whether asserting a claim for actual fraud or constructive fraud, the focus of the Illinois Uniform Fraudulent Transfer Act ("UFTA") is always on a "transfer made or obligation incurred by a debtor[.]" *See*, *e.g.*, 740 ILCS 160/5, 160/6. Indeed, the possible relief available under the UFTA is all tailored to the actionable transfer or obligation: "In an action for *relief against a transfer or obligation* under this Act, a creditor, subject to the limitations in Section 9, may obtain . . . ." 740 ILCS 160/8 (emphasis added); *see also id.* (identifying the available remedies, all of which pertain to the transfer or obligation).

Plaintiff fails to identify what asset MDP received from Benefytt or what obligation flowed from Benefytt to MDP as a result of the August 2020 acquisition. The opposition appears to acknowledge that, as a result of the acquisition, MDP Funds merely became an indirect holder of common equity in Benefytt. (*See* Dkt. 93 at 30.) However, Plaintiff ignores that Daylight Beta Corp. (a wholly owned subsidiary of Daylight Beta Parent Corp., both entities of which were created in connection with the Benefytt acquisition) acquired Benefytt by purchasing the majority of the outstanding shares in Benefytt and then merging into Benefytt. *See* Tender Offer Statement

17

(July 24, 2020) at EX-99.A.1.A (offer to purchase shares). The acquisition was consummated through transfers of equity interests *from stockholders to affiliates of MDP*, not a transfer from *Benefytt to MDP*. The fraudulent transfer claim should be dismissed.

### D. Plaintiff's New Fraudulent Transfer Theories Are Meritless.

Plaintiff attempts to salvage his fraudulent transfer claim by asserting MDP "orchestrated" and "coordinated" a leveraged buyout to acquire Benefytt, and then asserts (without analysis) that various transfers to *other parties* are avoidable fraudulent transfers. (Dkt. 93 at 22-35.) Plaintiff thus comes up with new theories relating to the "collapsing doctrine," leveraged buyout transactions and dividends in an effort to establish actual or constructive fraud. (*Id.*) Plaintiff's theories are well beyond the scope of his FAC and, in any event, entirely meritless.

#### i. The "collapsing doctrine" does not provide a theory of liability.

At the outset, the "collapsing doctrine" (*see* Dkt. 93 at 24), does not provide a theory of liability that supports Plaintiff's fraudulent transfer claim against MDP. Plaintiff fundamentally misunderstands the doctrine and provides no factual support for its application in any event.

The Second Circuit has explained the "paradigmatic" context for the doctrine's application:

> [O]ne transferee gives fair value to the debtor in exchange for the debtor's property, and the debtor then gratuitously transfers the proceeds of the first exchange to a second transferee. The first transferee thereby receives the debtor's property, and the second transferee receives the consideration, while the debtor retains nothing.

> Under these circumstances, *the initial transfer of the debtor's property to the first transferee is constructively fraudulent if two conditions are satisfied*. First, in accordance with the foregoing paradigm, the consideration received from the first transferee must be reconveyed by the debtor for less than fair consideration or with an actual intent to defraud creditors. . . .

> Second . . . the transferee in the leg of the transaction sought to be voided must have actual or constructive knowledge of the entire scheme that renders her exchange with the debtor fraudulent.

*HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635 (2d Cir. 1995) (emphasis added).

This is not alleged to have occurred here. The collapsing doctrine does not shift fraudulent transfer liability to a party that was not a transferee. Rather, the doctrine is utilized to preclude a "good-faith transferee" defense of a transferee who ostensibly provided value to the debtor, but such value was actually earmarked to be transferred elsewhere. *See*, *e.g.*, 740 ILCS 160/9 (concerning rights of good-faith transferees). The collapsing doctrine simply does not apply here.

> ### ii.     Plaintiff cannot allege a fraudulent transfer based on the conclusory (and incorrect) use of the LBO label.

Plaintiff's characterization of the August 2020 acquisition as a leveraged buyout ("LBO") is demonstrably frivolous and likewise fails to help his claim against MDP. Plaintiff's use of the term "LBO" as a conclusory and pejorative buzzword lacks any factual support whatsoever.

The Seventh Circuit describes an LBO as a transaction where "an investor buys the stock of a corporation from the stockholders with the proceeds of a loan secured by the corporation's own assets." *Boyer v. Crown Stock Distribution, Inc.*, 587 F.3d 787, 791–92 (7th Cir. 2009). Plaintiff disingenuously characterizes the entire acquisition as an "LBO", when in reality the acquisition involved an ancillary dollar-for-dollar refinancing of Benefytt's prior credit facility. Since the new credit facility did not increase Benefytt's debt load or result in the diminution of value—and Plaintiff fails to allege either occurred—neither Benefytt's obligations under the new facility or the liens granted to secure such obligations are avoidable as fraudulent transfers.

The FAC alleges MDP's acquisition of Benefytt required "Benefytt to take on tremendous amounts of debt—including a *$207.5 million* credit agreement—which MDP and Daylight Beta knew would impair Benefytt's ability to pay a class judgment[.]" (Dkt. 22 ¶ 102, emphasis added.) Plaintiff conveniently fails to mention that, as of June 30, 2020 (prior to the announcement of MDP's tender offer), Benefytt "had a *$207.5 million* outstanding balance from draws on the [pre-

existing credit facility] and there was no remaining balance available to be drawn upon." *See* SEC Form 10-Q (August 10, 2020) at p. 38 (emphasis added). The notes to the consolidated financial statements in the relevant Form 10-Q include a debt schedule reflecting a $65 million line of credit and $142.5 million in term loans under the pre-existing credit facility. *Id*. at p 14. The commitment letter from the lenders providing the new credit facility in connection with the August 2020 acquisition reflects the new credit facility was simply intended to replace the existing one. Tender Offer Statement (July 24, 2020) at EX-99.B.1 (debt financing commitment letter at pp. A-1, A-2). Contrary to Plaintiff's unsupported argument, the new credit agreement was used to pay off the $142.5 million in term loans outstanding under the prior credit facility and to provide a new $65 million revolving line of credit, while *MDP Funds' equity commitment—totaling <u>nine figures</u>—* was used to pay off any outstanding borrowings under the prior $65 million line of credit. *See* Tender Offer Statement (July 24, 2020) at EX-99.D.5; *see also* SEC Schedule 14D-9 at p. 5.

Plaintiff devotes significant space to claiming that the "LBO" (which it was not) was structured to make payments to "Benefytt Insiders". (Dkt. 93 at 25-28.) Again, this appears nowhere in the FAC. And Plaintiff nowhere identifies any transfer *to MDP*. (*Id.*) Nor does Plaintiff allege that the payments to "Benefytt Insiders" *came from Benefytt* or any purported debt.

At the end of the day, because the amount of Benefytt's secured debt did not increase as a result of the new credit agreement, the value of Benefytt (*i.e.*, in terms of assets vs. liabilities) did not diminish and unsecured creditors were not put in a worse position as a result of the acquisition. Therefore, nothing about the new credit agreement or the acquisition constitutes a fraudulent transfer. See *Mann v. LSQ Funding Group, L.C.*, 71 F.4th 640, 648 (7th Cir. Jun. 22, 2023) ("The Trustee in this case concedes that the transfer at issue here did not diminish the Debtor's estate. Under our established precedent, this means he failed to show that the transfer involved 'an interest

of the debtor in property.' Accordingly, he cannot avoid the $10.3 million transaction[.]"); *see also In re Chase & Sanborn Corp.*, 813 F.2d 1177, 1181 (11th Cir. 1987) ("Fraudulent transfers are avoidable because they diminish the assets of the debtor to the detriment of all creditors. Presuming control from the mere fact of transfer thus begs the essential question presented by section 548 claims: did the transfer diminish the assets of the debtor?").

### iii. *Hypothetical dividends do not provide a basis for a fraudulent transfer claim against MDP.*

Plaintiff contends the mere possibility of dividends suffices to allege fraudulent transfer. (Dkt. 93 at 28-30.) Again, Plaintiff does not identify any dividend made by Benefytt *to MDP*. (*Id.*) Plaintiff concedes MDP did not acquire any preferred equity. (*Id.* at 30 ["A separate group of sponsors purchased $87.5 million of preferred equity."]) This new theory fails in any event.

Plaintiff points to preferred equity "accru[ing] [at] a recurring 12.5% dividend," (Dkt. 93 at 30), but fails to explain the significance of this dividend or even whether it has ever been paid-out in cash.[10] Furthermore, (i) Plaintiff includes none of these contentions in his FAC and (ii) never so much as suggests MDP would receive any such dividend. (*Id.*) The mere theoretical future possibility of cash being transferred out of Benefytt as dividends on preferred equity (which none of the MDP Funds own) cannot support Plaintiff's fraudulent transfer claim against MDP. Every for-profit business entity may issue dividends to equity holders at some point. If Plaintiff's theory is correct, every Plaintiff in lawsuits would be entitled to assert a fraudulent transfer claim against a business entity defendant on the basis that business entities may issue dividends.

---

[10]     Indeed, Plaintiff fails to disclose that, as a default matter, the annual dividend on the preferred equity is "capitalized" into the stock's liquidation preference (*i.e.*, like paid-in-kind interest added to a loan balance) rather than paid in cash, as a default matter absent an election to cash pay the dividend. *See* Tender Offer Statement (July 24, 2020) at EX-99.B.2 (preferred equity commitment letter) at pp. 16-17.

### iv. *Plaintiff fails to allege post-August 2020 debt as fraudulent transfers.*

Plaintiff points to a schedule of Benefytt's funded debt obligations filed in Benefytt's bankruptcy case, which reflects additional debt incurred over the three years following the August 2020 acquisition. (*See* Dkt. 93 at 32-34.) Again, Plaintiff does not connect any of these debt transactions to MDP or offer analysis as to why the debt issuances constitute fraudulent transfers.

Rather, Plaintiff argues that the debt transfers are actually fraudulent (rather than constructively fraudulent) because—without any factual support whatsoever—it was MDP's plan to cause Benefytt to incur debt prior to running Benefytt into bankruptcy. (*See id.* at 34.) The contention is utterly implausible. MDP is an investment adviser that raises funds from investors and, in turn, invests those funds in opportunities for purposes of obtaining a return on investment. The MDP Funds committed nine figures in cash in order to consummate the August 2020 acquisition of Benefytt. *See* Tender Offer Statement (July 24, 2020) at EX-99.D.5; *see also* SEC Schedule 14D-9 at p. 5. The suggestion that MDP would cause the MDP Funds to pay *nine figures* in investor funds in exchange for common stock of a company with the intention of placing that company into a bankruptcy strains credulity. Such an alarming accusation requires *factual support*. Plaintiff's unsupported new theory should be rejected.

### E. Plaintiff Fails to Plausibly Allege Claims of Actual or Constructive Fraud.

By his opposition, Plaintiff clarifies for the first time that he is intending to pursue claims under 740 ILCS 160/5 and 740 ILCS 160/6, though Plaintiff again declines to clarify the specific subsections under which he intends to proceed. (Dkt. 93 at 22.) As detailed in the Motion to Dismiss, Plaintiff's vague allegations are plainly insufficient. (*See* Dkt. 27 at 24-30.) MDP incorporates herein its analysis as detailed in the Motion to Dismiss.

<u>First</u>, Plaintiff fails to allege the badges of fraud to proceed under 740 ILCS 160/5(a)(1). (*See id.* at 24-26.) Plaintiff's effort to identify these badges in his opposition is misguided. (*See*

Dkt. 93 at 31.) Plaintiff does not (and cannot) allege that (i) MDP was an "insider" prior to the acquisition (such a contention fails as a matter of common sense and law, *see* 740 ILCS 160/2(g)); (ii) Benefytt retained control of transferred property (Plaintiff fails to allege any transfer of property to MDP); (iii) his claim arose prior to the purported "transfer" (Plaintiff's claim did not arise until October of 2021); or (iv) all or substantially all assets were transferred (Plaintiff does not allege any transfer of anything from Benefytt to MDP).[11] Plaintiff also conveniently ignores MDP, through its related funds committed nine figures to consummate the acquisition of Benefytt. *See* Tender Offer Statement (July 24, 2020) at EX-99.D.5; *see also* SEC Schedule 14D-9 at p. 5. Plaintiff could not reasonably challenge the value paid (and specifically alleges a premium was paid, Dkt. 22 ¶ 108). All Plaintiff can do is point to the happenstance of Benefytt's subsequent bankruptcy. *See Firstar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F. Supp. 2d 1029, 1048 (N.D. Ill. 2003) (finding *four* badges of fraud insufficient).

Second, and as detailed further in the Motion to Dismiss, Plaintiff has failed to allege the necessary facts to sustain a claim under 740 ILCS 160/5(a)(2) or 740 ILCS 160/6(a)-(b). (Dkt. 27 at 27-30.) Plaintiff makes no reference whatsoever to any subsection in his FAC, fails to mention 740 ILCS 160/5(a)(2) in his opposition and only mentions 740 ILCS 160/6(a)-(b) in a footnote without analysis. (*See* Dkt. 93 at 23 n.26.) Rules 8 and 9 *require more.*

### F.   Plaintiff's Alleged Fraudulent Transfer Remedies as to MDP Are Frivolous.

On June 30, 2023, Plaintiff filed a "Supplemental Statement as to Automatic Stay." (Dkt. 108.) Plaintiff sought to clarify the remedies he seeks against MDP under his alleged fraudulent transfer claim. (*Id*. at 2.) Plaintiff's filing establishes the relief he seeks as to MDP is meritless.

---

[11]   To the extent Plaintiff implies the acquisition of Benefytt itself is the purportedly fraudulent transfer, Plaintiff is mistaken. MDP Funds acquired indirect equity interests in Benefytt from Benefytt's prior shareholders. That Benefytt's ultimate owners changed does not somehow evidence an improper transfer of assets or money out of Benefytt to MDP.

First, Plaintiff is pursuing improper damages remedies. A fraudulent transfer claim is "an action for relief against a transfer or obligation under this Act." 740 ILCS 160/8. Plaintiff cannot seek "TCPA money damages" or an attachment of MDP's assets to satisfy judgments in this and other cases. The purpose of a fraudulent transfer claim is to recoup the asset transferred or the value of the same. *See* 740 ILCS 160/9(b) ("[T]he creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less."); *cf. Grochocinski v. Schlossberg*, 402 B.R. 825, 840 (N.D. Ill. 2009) ("[T]he trustee may bring a second cause of action to recover the property transferred or its value pursuant to 11 U.S.C. § 550(a)"). Plaintiff cannot seek TCPA damages under this claim.

Furthermore, and similarly, Plaintiff cannot use his fraudulent transfer claim to seek an attachment of assets to satisfy a judgment relating to this and earlier-filed TCPA actions. (See Dkt. 108 at 2.) A claim for fraudulent transfer pertains *to the transfer*. *See, e.g.*, *Bank of Am. v. WS Mgmt., Inc.*, 2015 IL App (1st) 132551, ¶ 85 ("The purpose of the Fraudulent Transfer Act is to invalidate otherwise sanctioned transactions made with a fraudulent intent.") (cleaned up). It does not enable Plaintiff to broadly pursue damages with no relation to the value purported transfer. *See, e.g.*, *Neshewat v. Salem*, 365 F. Supp. 2d 508, 521 (S.D.N.Y. 2005), *aff'd*, 194 F. App'x 24 (2d Cir. 2006) ("Generally, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance.") (internal quotations and citation omitted). Plaintiff cannot use a fraudulent transfer claim to reach more assets and value than if no purported transfer had occurred in the first place.[12]

---

[12]     It also bears noting that attorneys' fees are not permitted under the Illinois Uniform Fraudulent Transfers Act. *See, e.g.*, *Bank of Am. v. WS Mgmt., Inc.*, 2015 IL App (1st) 132551, ¶ 121. Plaintiff's attempt to seek fees under this Act is therefore meritless. (Dkt. 108 at 2.)

Second, Plaintiff contends he can pursue broad injunctive relief as to MDP to restrict future transactions. (Dkt. 93 at 2 n.1, at 13.) Plaintiff is seeking to "foreclose MDP from entering into similar fraudulent transfers or transactions in the future." (Dkt. 101 at 6, 7 [cleaned up].) Plaintiff is seeking injunctive relief as to hypothetical future transactions that do not pertain to him. No such remedy exists, either as a matter of standing or as a matter of the Illinois law. *See, e.g., TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages."). To obtain injunctive relief, Plaintiff must demonstrate he "faces—going forward—a real and immediate threat of future injury from [MDP's] actions." *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 857 (N.D. Ill. 2021) (internal quotations and citation omitted). Further, a "threatened injury must be ***certainly impending*** to constitute injury in fact . . . [a]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotations and citation omitted, emphasis added).

Plaintiff has no real and immediate threat of future injury relating to "fraudulent transfers or transactions in the future" that have not yet occurred with entities Plaintiff does not identify. Plaintiff has no "certainly impending" risk of harm from such hypothetical future transactions. It is, furthermore, plainly impossible to deem hypothetical future transactions fraudulent in advance. Plaintiff similarly lacks any "particularized" injury as a result of nameless future transactions. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Plaintiff cannot seek injunctive relief to police future transactions that do not impact him and to prejudge such transactions as fraudulent.

Standing aside, the UFTA does not permit a free-wheeling request for injunctive relief to attempt to prevent future, hypothetical, unrelated conduct. The UFTA, rather, permits tailored injunctive relief. *See* 740 ILCS 160/8 (permitting "an injunction against further disposition by the

debtor or a transferee, or both, of the asset transferred or of other property."). It by no means permits injunctive relief regarding unnamed future hypothetical transactions. Plaintiff cannot pursue any claim for injunctive relief against MDP to police hypothetical future transactions.

## **CONCLUSION**

For the foregoing reasons, MDP respectfully requests the Court (i) dismiss or stay this action pending the first-filed cases; (ii) or, if the first-to-file doctrine does not apply, dismiss the FAC for failure to state a claim; and (iii) award all other relief it deems equitable and just.

Dated: July 19, 2023                                  Respectfully submitted,

**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**

By: */s/ Mark S. Eisen*

Mark S. Eisen, Esq.
meisen@beneschlaw.com
Paul A. Del Aguila, Esq.
pdelaguila@beneschlaw.com
Jamie N. Ward, Esq.
jward@beneschlaw.com
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: (312) 212-4949
Facsimile: (312) 767-9192

*Counsel for Madison Dearborn Partners*