**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WES NEWMAN, *individually and on behalf of all others similarly situated*, )<br>)<br>) | |
| Plaintiffs, ) | Case No. 1:22-cv-04845 |
| ) | |
| v. ) | Judge Elaine Bucklo |
| ) | Hon. Magistrate Judge Maria Valdez |
| BENEFYTT TECHNOLOGIES, INC. f/k/a )<br>HEALTH INSURANCE INNOVATIONS, )<br>INC., TOGETHERHEALTH INSURANCE, )<br>LLC, DAYLIGHT BETA PARENT )<br>CORPORATION, and MADISON )<br>DEARBORN PARTNERS, LLC, )<br>) | |
| Defendant. ) | |

**MADISON DEARBORN PARTNERS, LLC'S**
**ANSWER & AFFIRMATIVE DEFENSES**

NOW COMES Defendant Madison Dearborn Partners, LLC ("MDP"), by and through its attorneys, and for their Answer and Affirmative Defenses to Plaintiff's First Amended Class Action Complaint, respectfully states as follows.

**PRELIMINARY STATEMENT**

By its Order dated August 31, 2023, this Court (i) stayed Plaintiff's Count VI as to MDP and (ii) acknowledged the stay of this matter as to the remaining co-defendants. (*See* Dkt. 114.) MDP thus files this answer on its own behalf, alone. MDP does not purport to answer for the co-defendants.

**ANSWER**

1. Plaintiff Wes Newman received two unsolicited telemarketing calls on his cellular telephone in October 2021, which were made for the purpose of advertising Benefytt Technologies, Inc. ("Benefytt") and TogetherHealth Insurance, LLC ("TogetherHealth") products and services. These calls were also made for the material and knowing benefit of Defendants

Daylight Beta Parent Corporation ("Daylight Beta"), and Madison Dearborn Partners, LLC ("MDP").

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth

or falsity of whether Plaintiff received two telemarketing calls in October of 2021, and on that

basis denies this allegation. MDP also lacks knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and

on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies

each and every remaining allegation set forth in Paragraph 1.

2.     The calls were made using an automated system that makes rapid-fire calls faster
than Defendants' telemarketers' call centers could handle them, used spoofed caller IDs, and failed
to properly identify the caller and seller in attempts to prevent Plaintiff from determining who was
behind the calls. What is more, the calls were made even though Plaintiff had previously asked
not to receive telemarketing calls from or on behalf of Benefytt.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations made in the first sentence of this Paragraph, and on that basis denies

the allegations made in the first sentence. MDP lacks knowledge or information sufficient to form

a belief as to the truth or falsity of the allegations set forth in this Paragraph as made against the

co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP

alone, MDP denies each and every remaining allegation set forth in Paragraph 2.

3.     These calls were systematic. Defendants' telemarketer told Plaintiff that it had
called his cell phone "millions" of additional times, but Plaintiff does not know which calls those
were because those calls did not comply with clear requirements that the telemarketer and products
be disclosed at the beginning of every telemarketing call. As a matter of policy, pattern, and
practice, the telemarketers concealed who they were and concealed that the calls were made for
Defendants' benefit, in order to continue to benefit from the calls and avoid getting caught.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth

or falsity of whether Plaintiff allegedly received telemarketing calls and the allegations

surrounding those calls, and on that basis denies this allegation and allegations pertaining to the

alleged calls.  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in this Paragraph as made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 3.

4.  Plaintiff seeks redress for himself and several classes of others pursuant to the Florida Mini-TCPA, Fla. Stat. § 501.059, and the Telephone Consumer Protection Act, 47 U.S.C. § 227, for these violations.  Plaintiff seeks damages, injunctive relief to the extent not already been secured through *FTC v. Benefytt Technologies, Inc.*, 8:22-cv-01794 (M.D. Fla.), attorney's fees and costs to the extent permitted by law, and any other relief the Court finds just.

**ANSWER**: MDP admits that Plaintiff brings this lawsuit as a putative class action, seeking to represent several putative classes, and brings claims under the Florida Telemarketing Sales Act ("FTSA"), Fla. Stat. § 501.059 and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, seeking the stated relief.  MDP states that the cited case speaks for itself and specifically denies this allegation and refers the Court to the cited case for its full content.  Answering further, MDP denies that there is any factual or legal basis for the claims alleged, the relief sought or for classwide treatment, and denies each and every remaining allegation set forth in Paragraph 4.

## PARTIES

5.  Plaintiff Wesley Newman is an individual who lives in Cook County, Illinois.  Plaintiff is the sole subscriber and only regular user for his cell phone reference herein.  Plaintiff is a residential subscriber for this phone, which is a non-business number.  He received the calls at issue in this District.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 5, and on that basis denies them.

6.  Defendant Benefytt Technologies, Inc., formerly known as Health Insurance Innovations, Inc. ("Benefytt"), is a Delaware corporation with its principal place of business at 3450 Buschwood Dr., Suite 200, Tampa, Florida 33618. Madison Dearborn Partners, LLC maintains a controlling interest in Benefytt Technologies, Inc., which transacts or has transacted business in this District and throughout the United States.  Benefytt conducts telephone sales calls within the State of Florida to consumers located in Florida and nationwide – including the calls to Plaintiff and other class members in this District.

**ANSWER**: MDP admits that Benefytt, formerly known as Health Insurance Innovations, Inc., is a Delaware Corporation with its principal place of business at 3450 Buschwood Dr., Suite 200, Tampa, Florida 33618. MDP admits that Benefytt transacts business in various places throughout the United States. MDP denies that it maintains a controlling economic interest in Benefytt. MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 6, and on that basis denies them.

7. Benefytt, TogetherHealth, Daylight Beta and MDP each conducted the telemarketing at issue in this lawsuit through Benefytt at its headquarters that are located in Tampa, Florida.

**ANSWER**: MDP admits that Benefytt is headquartered in Tampa, Florida. MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 7.

8. Benefytt maintains Defendants' internal do-not-call list, and along with TogetherHealth oversees compliance as to that list for Defendants from the State of Florida. Defendants' internal do-not-call list does not differentiate or segment do-not-call requests or notations among affiliates; there is only one operative list.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 8.

9. Benefytt does business in this District, in that it currently has thousands of customers in Illinois that were gained through the illegal telemarketing complained of herein, and continues to gain customers in Illinois through such calling.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis

denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 9.

10.     For example, Benefytt markets 31 different "Medicare Advantage" plans to consumers in this Court's 60604 ZIP code alone.  *See* http://medicare.healthinsurance.com/quote (Benefytt's website, with Medicare plan lookup by ZIP code).

**ANSWER**: MDP states that the cited website filing speaks for itself and specifically denies this allegation and refers the Court to the cited website for its full content.  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 10.

11.     Benefytt wholly owns Health Plan Intermediaries Holdings, LLC, as well as the various subsidiary operating companies owned by Health Plan Intermediaries Holdings, LLC, including TogetherHealth.  *See* Benefytt SEC Form 10-K, Ex. 21 (Mar. 4, 2020) (https://www.sec.gov/Archives/edgar/data/1561387/000156138720000002/exhibit21_2019-12x31.htm).

**ANSWER**: MDP admits that Health Plan Intermediaries Holdings, LLC wholly owns Benefytt, and that Health Plan Intermediaries Holdings, LLC has subsidiaries, including TogetherHealth.  Answering further, MDP states that the cited SEC filing speaks for itself and specifically denies this allegation and refers the Court to the SEC filing for its full content.  MDP denies each and every remaining allegation set forth in Paragraph 11.

12.     Defendant TogetherHealth Insurance, LLC ("TogetherHealth") is a licensed insurance agency that purports to connect individuals to Medicare Advantage and Prescription Drug plans.  It is a client-facing brand and part of the Benefytt family of companies, the purpose of which is to support Benefytt's lead sales business for the benefit of Daylight Beta and MDP.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph against the co-defendants, and on that basis denies those allegations.  MDP denies that TogetherHealth supports Benefytt's lead sales business for the benefit of MDP, and, on behalf of MDP alone, denies each and every remaining allegation

set forth in Paragraph 12.

13. From its headquartered in Florida, TogetherHealth actively solicits business for itself and its co-defendants in Illinois, including the illegal calls to Plaintiff, and it holds a license to sell insurance products and services here (License No. 3000474398). TogetherHealth conducts telephonic sales calls including and like the ones Plaintiff and the class received, from a location within the State of Florida.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 13.

14. TogetherHealth is "the entity behind the Medicare Coverage Helpline and Joe Namath Medicare Advantage television commercials, which advertise to Medicare beneficiaries" in this District and nationwide. https://www.medicarecoveragehelpline.com/about.

**ANSWER**: MDP states that the cited webpage speaks for itself and specifically denies this allegation and refers the Court to the cited webpage for its full content. Answering further, MDP admits the remaining allegations set forth in Paragraph 14.

15. Defendant Madison Dearborn Partners, LLC ("MDP") is a Delaware limited liability company with its headquarters and a principal place of business at 70 West Madison Street, Suite 4600, Chicago, Illinois 60602, in this District. MDP is "at home" in this District.

**ANSWER**: MDP admits that it is a Delaware limited liability company with its headquarters and principal place of business at 70 West Madison Street, Suite 4600, Chicago, Illinois 60602, which is in the Northern District of Illinois. Answering further, the remaining allegations in this Paragraph consist of a legal conclusion to which no response is required. To the extent an answer is required, MDP denies the allegations.

16. MDP oversaw, directed and was responsible for the Florida-based telemarketing activities alleged herein from its headquarters in Chicago, Illinois, and it also accepted and realized the benefits of the challenged acts and omissions in this District.

**ANSWER**: MDP admits that it is headquartered in Chicago, Illinois. Answering further, MDP denies each and every remaining allegation set forth in Paragraph 16.

17.     For example, after its purchase of Benefytt, MDP actively participated in analyzing outbound call lead generation forecasts, and helped direct related minutiae such as how many caller IDs to use during outbound telemarketing calls, managing how many times to call a particular telephone number in a single day, how to manage "dead air" calls such as the ones Plaintiff received, and how to most effectively use interactive voice response ("IVR") prerecorded messages to screen uninterested call recipients to prevent them from taking live agents' time. Benefytt, Daylight Beta, and TogetherHealth also materially participated in these discussions, too.

**ANSWER**: MDP denies each and every allegation set forth in Paragraph 17.

18.     Defendant Daylight Beta Parent Corporation ("Daylight Beta") was created for the purpose of purchasing Benefytt, and for the purpose of assisting Defendant MDP in benefitting from Defendants' business – including the telemarketing at issue – while at the same time attempting to insulate MDP from liability. Defendants consider Daylight Beta and Benefytt to be substantially the same entity. For example, the two share the same books and records, assets and liabilities, and risks and benefits – without differentiation.

**ANSWER**: MDP admits that Daylight Beta Parent Corporation was created in connection with the acquisition of Benefytt. MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 18 against the other co-Defendants, and on that basis denies them. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 18.

19.     All Defendants herein are under common ownership, and are affiliates.

**ANSWER**: MDP states that the allegation that Defendants are all affiliates is a legal conclusion to which no response is required. To the extent an answer is required, MDP denies this allegation. MDP denies that the Defendants are under common ownership. Answering further on behalf of MDP alone, MDP denies each and every allegation set forth in Paragraph 19.

20.     MDP purchased Benefytt in summer 2020. At the time MDP purchased Benefytt, MDP knew that Benefytt had a policy and practice of generating business derived from nonconsensual autodialer/prerecorded-voice telemarketing and not honoring requests not to call, and had been out of compliance with the TCPA's internal do-not-call regulations for some time, including that Benefytt did not have a written do-not-call policy or complete do-not-call list. MDP also knew about numerous consumers' prior complaints and lawsuits against Benefytt for earlier telemarketing violations.

**ANSWER**: MDP admits that, at the time of the indirect acquisition of Benefytt by funds managed by MDP, it was aware that Benefytt was a defendant in certain litigation, including under the TCPA. MDP denies each and every remaining allegation set forth in Paragraph 20.

21.     On August 21, 2020, MDP issued a press release[1] concerning its acquisition of Benefytt and its affiliate co-defendants; as of August 25, 2022, the press release remains. MDP elected to include a quotation in this press release touting Benefytt's now-disgraced CEO Gavin D. Southwell[2] as looking forward to receiving strategy advice—advice and oversight MDP has gone on to provide:

> As we enter this next phase, the entire Benefytt team looks forward to drawing upon Madison Dearborn's deep expertise in the insurance technology and health care industries to drive our transformation strategy forward.

**ANSWER**: MDP admits that on August 21, 2020, it issued a press release concerning the indirect acquisition of Benefytt by funds managed by MDP, and admits that the document referenced at footnote 1 consists of this press release. MDP further admits that the press release contains a quotation from Benefytt's then-CEO. MDP states, however, that the press release speaks for itself and denies this allegation, including that Plaintiff has included a full and accurate quotation from, description of or context for the press release, and refers the Court to the press release for its full content. MDP denies each and every remaining allegation set forth in Paragraph 21 and the footnote contained therein.

22.     Similarly, MDP's press release includes a quotation from Vahe Dombalagian, Managing Director of MDP's Financial & Financial Service team, stating:

> In this ever-changing market for Medicare-related plans and services, Benefytt's approach offers consumers a highly personalized and accessible enrollment experience. We are excited to build on Benefytt's technology-driven model and support Gavin

---

[1] Available at: https://mdcp.com/system/uploads/fae/file/asset/56/Benefytt_Technologie.pdf

[2] MDP kept Southwell on as CEO of Benefytt until he left in approximately August 2021. MDP has continued to bolster Benefytt's improper telemarketing and lead generation practices that existed under Southwell, and Defendants knowingly retain the resulting benefits.

and the rest of the management team as they continue to lead Benefytt's strategic transformation and product diversification.

**ANSWER**: MDP admits that the press release contains a quotation from Vahe Dombalagian, who is a Managing Director of MDP's Financial & Transaction Services team. MDP states, however, that the press release speaks for itself and denies this allegation, including that Plaintiff has included a full and accurate description of or context for the press release, and refers the Court to the press release for its full content. MDP denies each and every remaining allegation set forth in Paragraph 22.

23.     The "technology-driven model" and "enrollment experience" that MDP publicly stated it would "build upon" and enhance, includes Benefytt's telephonic lead generation marketing programs and the illegal telemarketing alleged herein. Vahe Dombalagian oversees and works to "build upon" Benefytt's marketing efforts from his primary and home office in Chicago, Illinois.

**ANSWER**: MDP admits that Vahe Dombalagian's primary office is in Chicago, Illinois. Answering further, MDP states that the press release speaks for itself and denies this allegation, including that Plaintiff has included a full and accurate description of or context for the press release, and refers the Court to the press release for its full content. MDP denies each and every remaining allegation set forth in Paragraph 23.

24.     MDP posted these statements in a formal press release that remains on its website, even though it had full knowledge and disclosure of the facts and circumstances concerning Benefytt's illegal telemarketing alleged herein. What is more, the illegal telemarketing continues under MDP's watch, as demonstrated by the calls to Plaintiff. MDP continues to ratify Benefytt's and Benefytt's subsidiary TogetherHealth's bad acts – as well as its own – by maintaining ties with Benefytt and TogetherHealth and electing to continue touting its partnership with them without altering their practices. This, despite the fact that – under MDP's leadership and direction – Benefytt agreed to a $100,000,000 permanent injunction order with the Federal Trade Commission for abusive and deceptive marketing violations like those alleged here. *See* https://www.ftc.gov/news-events/news/press-releases/2022/08/ftc-action-against-benefyttresults-100-million-refunds-consumers-tricked-sham-health-plans-charged.

**ANSWER**: MDP admits that the press release identified in Paragraph 21 remains accessible on its website as of the date of this answer. MDP also admits that Benefytt agreed to a

settlement with the Federal Trade Commission, which concerned a matter that arose prior to the indirect acquisition of Benefytt by funds managed by MDP. MDP states that, to the extent Plaintiff seeks to rely on the webpage cited in this Paragraph, MDP states that the webpage speaks for itself and denies Plaintiff's allegation and refers the Court to the webpage itself for its full content. Answering further, MDP denies each and every remaining allegation set forth in Paragraph 24.

25.     The agreed injunction specifies that Benefytt will exert substantial and absolute control over those that telemarket on its behalf, thus demonstrating Benefytt's ability to do so from the beginning.

**ANSWER**: MDP states that the referenced injunction speaks for itself and specifically denies this allegation and refers the Court to the underlying settlement and case for their full content. MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 25.

26.     MDP publicly claims that it is "a powerful partner" for companies in which it invests, including Benefytt, and states that it "assist[s] company management in growing their businesses." MDP has, and continues to, assist Benefytt and Daylight Beta in growing their business, including with regard to telemarketing, Benefytt's primary marketing strategy.

**ANSWER**: MDP states that Plaintiff provides no citation to the language quoted in Paragraph 26, and on that basis MDP denies the allegations set forth in the first sentence of Paragraph 26. MDP states that the referenced language appears to come from its website; MDP's website speaks for itself and MDP specifically denies this allegation and refers the Court to the website for its full content. Answering further, MDP denies each and every remaining allegation set forth in Paragraph 26.

27.     Benefytt and Daylight Beta, under the supervision and guidance of MDP, continues to accept business and gain new customers through illegal telemarketing, even though both

Benefytt and MDP know that their telemarketing is woefully - and in some cases criminally - illegal.

**ANSWER**: MDP denies each and every allegation set forth in Paragraph 27.

28.     MDP has publicly committed to providing the companies it [*sic*] which it invests with oversight in the areas of audit, risk management, and compliance.  This commitment by MDP holds true as to Benefytt and its affiliate co-defendant TogetherHealth herein.  MDP provided and continues to conduct audits of marketing efforts and counsels Benefytt as to risk management and compliance, including TCPA risk management and compliance.

**ANSWER**: MDP admits that it provides certain services to the portfolio companies of the

investment funds that MDP advises.  Answering further, MDP denies each and every remaining

allegation set forth in Paragraph 28.

29.     Even if MDP does not conduct audits and risk management and compliance advice as to its co-defendants' TCPA issues as it publicly touts, it knows that Benefytt and its codefendant affiliates are out of compliance, and has made the conscious decision to ignore such without investigating further.  MDP nevertheless knowingly benefits from the illegal – and in many cases criminal – conduct at Benefytt.

**ANSWER**: MDP denies each and every allegation set forth in Paragraph 29.

30.     MDP conducted the telemarketing complained of herein through its affiliate Benefytt, within the State of Florida.

**ANSWER**: MDP denies each and every allegation set forth in Paragraph 30.

31.     Daylight Beta conducted the telemarketing complained of herein through its affiliate Benefytt, within the State of Florida.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations set forth in Paragraph 31, and on that basis denies them.

32.     Benefytt conducted the telemarketing herein from within the State of Florida.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations set forth in Paragraph 32, and on that basis denies them.

33.     TogetherHealth conducted the telemarketing herein from within the State of Florida.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 33, and on that basis denies them.

34.     Defendants (and each of them) conducted the telemarketing alleged herein through Benefytt's Florida location Thousands [*sic*] – or millions – of the calls that are the subject of this case were also made to consumers located in the State of Florida.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 34.

35.     MDP and its co-defendants continue to accept the benefits of the illegal telemarketing at issue, despite concrete and absolute knowledge of the improper acts and omissions alleged herein. Even if no Defendant has turned a profit as to the telemarketing at issue – particularly because in August 2022, Benefytt entered into an agreement to pay $100,000,000 to the Federal Trade Commission for asserted abusive and deceptive telemarketing and other marketing violations – each Defendant materially benefits from the telemarketing in the form of, for example, offsetting losses, gaining customers, marketing in general, and assistance preparing for their next business venture.

**ANSWER**: MDP also admits that Benefytt agreed to a settlement with the Federal Trade Commission, which concerned a matter that arose prior to the indirect acquisition of Benefytt by funds managed by MDP. MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 35.

36.     And although MDP appears to set up its purchase of Benefytt through a complex web of affiliated funds in order to try to insulate itself from liability, it is MDP itself that advises Benefytt as to marketing strategies, and it is MDP itself that knowingly continues to accept the benefits of customers gained through noncompliant calls that occurred before it purchased Benefytt. MDP itself also continues to knowingly accept the benefit of illegal telemarketing that continues today.

**ANSWER**: MDP denies each and every allegation set forth in Paragraph 36.

37.     Since August 2020, MDP, Daylight Beta and Benefytt each had – and each still has – sufficient control and power over the specifics of the telemarketing efforts challenged in this lawsuit, and could easily stop the violations by for example ceasing acceptance of business derived from telemarketing. Defendant TogetherHealth had such control, too, although ultimate responsibility and control of such was in the hands of its corporate parents MDP, Daylight Beta and Benefytt.  Instead of making the decision to change their ways, Defendants waited until the Federal Trade Commission forced them to do so in August 2022.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 37.

## JURISDICTION AND VENUE

38.     The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2). The amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed Classes of at least tens of thousands is entitled to up to $1,500 in statutory damages for each violation.  Further, Plaintiff alleges nationwide Classes, which will result in at least one member of each Class residing in a state different from each Defendant.

**ANSWER**:  MDP states that Paragraph 38 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 38.  Answering further, and as to any non-legal conclusions contained in this Paragraph, MDP denies that there is any factual or legal basis for the claims alleged, for the relief sought, or for classwide treatment, and denies each and every remaining allegation set forth in Paragraph 38.

39.     This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims.  *Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

**ANSWER**:  MDP states that Paragraph 39 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 39.

40.     The Court has supplemental jurisdiction over Plaintiff's Florida Mini-TCPA claims pursuant to 28 U.S.C. § 1367, because they are based on the same calls and so related to Plaintiff's federal TCPA claims that they form part of the same case or controversy.

**ANSWER**:  MDP states that Paragraph 40 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 40.

41.     The Court has personal jurisdiction over Defendants and venue is appropriate in this District because Defendants do business in this District, caused the calls that are the subject of this lawsuit to be made to Plaintiff and others in this District, generated sales of insurance and medical discount products through such calls and lead generation targeted at consumers like Plaintiff in this District, and because a substantial portion of the events giving rise to this cause of action occurred in this District.  Moreover, Defendant MDP is at home in this District, and was responsible for, oversaw, benefitted from (or attempted to benefit from) and directed the illegal acts and omissions alleged herein from and in this District.

**ANSWER**:  MDP admits it is headquartered in this District.  MDP states that the jurisdictional allegations of Paragraph 41 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the legal conclusions contained in Paragraph 41.  Answering further, and as to any remaining non-legal conclusions contained in this Paragraph, MDP lacks knowledge or information sufficient to form a believe as to the truth of the allegations in this Paragraph made against the co-defendants or relating to the calls Plaintiff alleges he received, and on that basis denies those allegations.  Answering further on behalf of MDP alone, and as to any remaining non-legal conclusions contained in this Paragraph, MDP denies each and every remaining allegation set forth in Paragraph 41.

## FACTS

42.     Plaintiff received a telemarketing call made on behalf of Defendant Benefytt on his cellular telephone, on July 17, 2019, and spoke with an insurance agent at Fort Lauderdale-based Health Advisors of America,[3] that was trying to sell Benefytt's goods and services.

---

[3] *See*, *In re John C. Spiller, Notice of Apparent Liability*, 35 FCC Rcd. 5948, 5952-54, n.63 (June 9, 2020).

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 42, and on that basis denies them.

43.     During this call, Plaintiff indicated a desire to not receive subsequent telemarketing calls. The telemarketer placed Plaintiff's cellular telephone number on Health Advisors of America's internal do-not-call ("IDNC") list on that date.  Plaintiff's cell number that Defendants called remains on the telemarketer's IDNC list today.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of what Plaintiff contends he indicated to the entity known as Health Advisors of America, and what that entity is alleged to have done with Plaintiff's number.  MDP also lacks knowledge or information sufficient to form a believe as to the truth of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 43.

44.     Benefit [*sic*] has possession of such IDNC list, but has not integrated it with its own

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 44.

45.     Indeed, Benefytt has always had the practical and contractual ability to obtain Health Advisors of America's call data and IDNC lists and coordinate it with its own, but Benefytt has never done so.  Upon purchase of Benefytt in around August 2020, MDP and Daylight Beta, too, had the practical and contractual ability to obtain call data and IDNC lists and coordinate so as to prevent telemarketing calls to persons who previously requested not to receive such, but willfully did not do so for their own and Benefytt and TogetherHealth's pecuniary benefit.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 45.

46.     Indeed, in August 2022, as part of a stipulated injunction that was the result of a lawsuit filed by the Federal Trade Commission, Benefytt agreed to monitor the telemarketing calls made on its behalf by third parties to ensure violations like those alleged here do not occur. through *FTC v. Benefytt Technologies, Inc.*, 8:22-cv-01794 (M.D. Fla.), at pp.16-22. If Benefytt, TogetherHealth, MDP and Daylight Beta did not have the authority or power to control those telemarketing on their behalf, Benefytt and its codefendants could not have agreed to this.

**ANSWER**:  MDP states that the referenced case and document speaks for itself and specifically denies this allegation and refers the Court to the cited document for its full content. MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 46.

47.     Moreover, Benefytt has been in possession of the IDNC list of the telemarketer that logged Plaintiff's do-not-call for multiple years but failed to coordinate that IDNC list with its own.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 47.

48.     On October 26, 2021, at approximately 3:09 p.m. CT, Plaintiff received an unsolicited telemarketing call on the same cellular telephone from caller ID 414-377-7721.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 48, and on that basis denies them.

49.     Plaintiff answered and said, "Hello," but nobody came onto the line and the caller dropped the call after approximately 9 seconds.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 49, and on that basis denies them.

50.     This call – and subsequent calls to Plaintiff and other members of the Class – was made using a system where the system, rather than a human being, determined which phone numbers to call, in what order. What is more, this system (not a human being) dialed the phone numbers to be called.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 50, and on that basis denies them.

51.     On October 27, 2021, at approximately 3:48 p.m. CT, Plaintiff received another call on his cellular telephone number from caller ID 414-377-7721.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 51, and on that basis denies them.

52.     Defendants, acting in concert through Florida-based Benefytt and TogetherHealth, and with full knowledge of the surrounding facts and circumstances, caused this call to be made to Plaintiff on their behalf.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 52.

53.     After Plaintiff picked up and said hello, there was a pause of a couple seconds and the caller played a "boop" sound.  Then, "Jordan with Healthcare Department" introduced himself on the other side of the line.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 53, and on that basis denies them.

54.     "Jordan with Healthcare Department" said that the call was about Plaintiff's Medicare coverage and lowering his co-pays.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 54, and on that basis denies them.

55.     "Jordan with Healthcare Department" also said that the call was being recorded for quality and training purposes.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 55, and on that basis denies them.

56.    "Jordan with Healthcare Department" asked some qualifying questions that Plaintiff answered.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 56, and on that basis denies them.

57.    "Jordan with Healthcare Department" told Plaintiff that he qualified, and that he would transfer Plaintiff to a licensed agent.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 57, and on that basis denies them.

58.    First, though, "Jordan with Healthcare Department" said that he had to read Plaintiff a short disclaimer, which said that by proceeding, Plaintiff was agreeing to have his call transferred regardless of whether he was on any state or federal DNC list.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 58, and on that basis denies them.

59.    While immaterial because Plaintiff had already received this illegal call, the DNC disclosure didn't operate to permit additional calls or properly justify taking Plaintiff's phone number off any DNC list.

**ANSWER**:  MDP states that Paragraph 59 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 59.  As to any non-legal conclusions contained in this Paragraph, MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, and as to any non-legal conclusions contained in this Paragraph, MDP denies each and every allegation set forth in Paragraph 59.

60.    In any event, Defendants lacked any prior express written consent for these calls to Plaintiff's phone number.

**ANSWER**:  MDP states that Paragraph 60 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 60.  As to any non-legal conclusions contained in this Paragraph, MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, and as to any non-legal conclusions contained in this Paragraph, MDP denies each and every allegation set forth in Paragraph 60.

61.    "Jordan with Healthcare Department" then attempted to transfer Plaintiff to Benefytt's affiliate Medicare Help Line, but said that he could not because Plaintiff's phone number was "blocked."

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 61, and on that basis denies them.

62.    "Jordan with Healthcare Department" acknowledged that the place where he was trying to transfer the call had Plaintiff's phone number "blocked" and asked if Plaintiff had another number that he could call, so Plaintiff provided a VOIP number.[4]

**ANSWER**:  MDP admits that Plaintiff alleges he is not suing over the alleged calls to his VOIP number.  Answering further, MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 62, and on that basis denies them.

63.    The reason the call transfer was blocked is that Plaintiff's phone number was on a list of "frequent litigators" that Defendants provide to their telemarketers in order to continue accepting business derived from telemarketing calls, while at the same time lessening the probability of being sued by individuals like Plaintiff who know about and enforce the TCPA.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis

---

[4] This lawsuit does not challenge calls to Plaintiff's VOIP number.

denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 63.

64. Later that day and the subsequent day, Plaintiff received numerous calls from Caller ID 414-377-7721 on this VOIP number, almost none of which adequately identified the caller or the seller.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 64, and on that basis denies them.

65. The first subsequent call Plaintiff received was at 3:54 p.m. CT that same day, October 27, 2021, from 414-377-7721. Plaintiff answered, there was no one on the other end, and the call hung up on Plaintiff.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 65, and on that basis denies them.

66. The second call was one minute later, at approximately 3:55 p.m. CT. Plaintiff picked up, said hello, and "Jordan" was on the other side.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 66, and on that basis denies them.

67. Jordan said he could now transfer Plaintiff to the licensed agent he had intended to transfer Plaintiff to earlier, and the call was transferred to woman with a Caribbean accent who said she was with Medicare Help Center. Plaintiff heard roosters crowing in the background.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 67, and on that basis denies them.

68. The Medicare Help Center telemarketer asked Plaintiff very similar qualifying questions as Jordan had.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 68, and on that basis denies them.

69. She then said that she would transfer Plaintiff to a licensed agent, but first needed to read a disclaimer that Plaintiff needed to agree with before proceeding.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 69, and on that basis denies them.

70.     The purportedly retroactive disclaimer this time mentioned that Medicare Help Center could call Plaintiff regardless of whether he was on any state or federal DNC lists and that they could call Plaintiff using an autodialer. This disclosure similarly did not operate to permit future calls to Plaintiff.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the alleged disclaimer recited to Plaintiff and the contents thereof. Answering further, MDP states that the remainder of Paragraph 70 consists of a legal conclusion to which no response is required. To the extent an answer is required, MDP denies the allegations contained in Paragraph 70.

71.     The telemarketer then transferred Plaintiff and a telemarketer named Milan Yu answered, who said he was marketing for TogetherHealth, Total Insurance Brokers, and Medicare Coverage Helpline. However, the connection was bad, and the call dropped before much could be discussed.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 71, and on that basis denies them.

72.     Plaintiff tried calling Benefytt subsidiary Total Insurance Brokers after this call, but was unable to reach anyone.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 72, and on that basis denies them.

73.     Plaintiff then tried calling Medicare Coverage Helpline in order to find out more information about the calling and get it to stop, during which its representative declined to assist. Instead, the representative referred Plaintiff to "corporate," which, only after further prodding from Plaintiff, the representative identified as TogetherHealth.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 73, and on that basis denies them.

74.     Benefytt uses its subsidiaries TogetherHealth and Total Insurance Brokers to funnel to it new customers to purchase the products and services sold over its platform—during which

calls Benefytt actively participates by emailing the prospective customer an application needed to complete the sales process, process payment, and thereafter administer the product purchased.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 74, and on that basis denies them.

75. Plaintiff received another call on his VOIP number the next day, October 28, 2021, at 5:20 p.m. CT, from caller ID 414-377-7721. Nobody came onto the line for the caller, and the call disconnected after about 9 seconds.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 75, and on that basis denies them.

76. Five minutes later, on October 28, 2021, at 5:25 p.m. CT, Plaintiff received another call from caller ID 414-377-7721.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 76, and on that basis denies them.

77. Plaintiff picked up, there was a "boop" sound, and then "Jordan with Healthcare Department" introduced himself again.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 77, and on that basis denies them.

78. During this call, Jordan acknowledged that "Healthcare Department" was not really the name of his company, and derided Plaintiff for thinking that it might have been.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 78, and on that basis denies them.

79. During this call, Jordan stated that his company had called Plaintiff's cell phone "millions of times," and challenged Plaintiff by saying, "so what?"

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 79, and on that basis denies them.

80. Most or all of Defendants' calls Plaintiff received did not include any words or text, other than a non-working caller ID telephone number.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 80.

81.    Based upon the telemarketer's above statement, Plaintiff alleges that he received many dozen more calls to his cellular telephone on behalf of Defendants than the two that included 414-377-7721 as the caller ID, and that other class members were similarly called on behalf of Defendants dozens of times each.  None of those other calls adequately identified any Defendant or themselves, each improperly and illegal [*sic*] spoofed caller ID, and most or all were made using a system that automatically selected and dialed the consumers' phone numbers.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 81.

82.    Telephone number 414-377-7721 was not a "working" number, in the sense that when one calls it back, the telemarketer would not answer.  In other words, that phone number was "spoofed."  It was the pattern and practice of telemarketers making calls on Defendants' behalf to spoof telephone numbers, just as the calls to Plaintiff.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 82.

83.    Based upon the normalcy and prolificity of such functionality, the phone systems used to call Plaintiff and other class members allowed whatever caller ID and label the caller wanted to be displayed to call recipients.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 83.

84.     Based upon the precisely-worded statement that appeared multiple times, at least the portion of the above calls where the caller said it was "Jordan with Healthcare Department" was recorded ahead of time and played during the calls. Alternatively, that statement was read from a script.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 84.

85.     This, in addition to the repeated calls and dead air or distinctive "boop" sound Plaintiff heard as the calls were connected with an agent, indicate that the calls Plaintiff and others received by or on behalf of Defendants were made using an automated system for the selection or dialing of telephone numbers, i.e., an autodialer.

**ANSWER**:  MDP states that Paragraph 85 consists of a legal conclusion concerning the use of an autodialer to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 85.  As to any non-legal conclusions contained in this Paragraph, MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, and as to any non-legal conclusions contained in this Paragraph, MDP denies each and every remaining allegation set forth in Paragraph 85.

86.     No Defendant has a do-not-call policy that comports with the requirements of the TCPA.

**ANSWER**:  MDP states that Paragraph 86 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 86.  As to any non-legal conclusions contained in this Paragraph, MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.

Answering further on behalf of MDP alone, and as to any non-legal conclusions contained in this Paragraph, MDP denies each and every remaining allegation set forth in Paragraph 86.

87.    Plaintiff then contacted Benefytt directly about the calls and asked Benefytt to share any proof that Plaintiff might have opted in to receive calls on its behalf.  Although Benefytt and its co-defendants each have the contractual and practical ability to obtain such as a matter of course, Defendants ignored Plaintiff's requests to see any consent-related documentation.  They also disclaimed any responsibility for the calls, and falsely claimed that Total Insurance Brokers was not a corporate affiliate of Benefytt.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 87.

88.    Each of the calls Plaintiff received from or on behalf of Defendants was made for the purpose of soliciting and encouraging a sale of goods or services.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 88.

## ADDITIONAL FACTS

89.    MDP purchased Benefytt and its affiliates (including Defendant TogetherHealth) in around August 2020, through its affiliate Daylight Beta—an entity created for that purpose. MDP was majority stakeholder in Daylight Beta at the time of purchase.  MDP and Daylight Beta knew that Benefytt used telemarketing to generate business, well before their purchase of Benefytt.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 89.

90.    At the time of purchase, MDP and Daylight Beta also knew that Benefytt was a defendant in multiple TCPA or similar state law lawsuits – many of which were class actions – and the subject of consumer and high-level governmental complaints concerning the propriety of the telemarketing by or on behalf of Benefytt like that which is alleged here.[5]

---

[5] *See, e.g.*, Form 10-K (Mar. 2, 2017) ("[W]e are subject to various federal and state telemarketing regulations, including the [TCPA] and the FCC's implementing regulations, as well as various

**ANSWER**:  MDP admits that, at the time of the indirect acquisition of Benefytt by funds managed by MDP, it was aware that Benefytt was a defendant in pending litigation, including under the TCPA, and that Benefytt had received information requests from regulatory authorities. MDP states that the cited SEC filings speak for themselves and specifically deny this allegation and refers to the Court to the SEC filings for their full content MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 90.

91.     At the time of purchase, MDP and Daylight Beta knew or should have known that the allegations of consumers, lawsuits and governmental entities concerning improper telemarketing were largely or completely true.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 91.

92.     Even if they believed the allegations of improper telemarketing to be untrue or insubstantial, MDP and Daylight Beta made a risk-benefit analysis as to whether to become the owners and affiliates of Benefytt and to benefit from its improper telemarketing, including the customers that were allegedly gained through illegal and criminal conduct.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 92.

93.     The result of MDP's and Daylight Beta's risk analysis was to go ahead and purchase Benefytt and its affiliates, despite the allegations of improper telemarketing, for the purpose of deriving benefit from such improper telemarketing.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 93.

---

state telemarketing laws and regulations. We, our distributors, and our carriers have been, and may continue to be, the subject of allegations of TCPA violations, and we could be responsible for some of the costs incurred by distributors or carriers who are the subject of allegations of TCPA violations.  Any violation of these regulations could expose us to damages for monetary loss, statutory damages, fines, penalties and/or regulatory inquiries.") (available at www.sec.gov/Archives/edgar/data/1561387/000149315217002078/form10-k.htm); Form 10-K (Mar. 4, 2020) (acknowledging past and ongoing TCPA litigation, and that "there is a possibility in the future that one or more … [TCPA] cases could have a material effect") (available at www.sec.gov/Archives/edgar/data/1561387/000156138720000002/hiiq-2019x12x31x10k.htm).

94.     In purchasing Benefytt and its affiliates, including their customer bases and corporate policies and procedures, MDP and Daylight Beta made a knowing decision to try to accept or generate a benefit from those allegedly illegal and criminal behaviors.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 94.

95.     Since purchasing Benefytt and its affiliates, MDP and Daylight Beta have not taken sufficient measures to prevent further telemarketing illegalities like those alleged herein.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 95.

96.     To the contrary, MDP and Daylight Beta receive substantial updates and audit reports as to lead generation and telemarketing compliance, progress, and efficacy, as to Benefytt and its affiliates like TogetherHealth.

**ANSWER**:  MDP admits that it received certain updates and information regarding Benefytt's compliance efforts.  MDP denies each and every allegation set forth in Paragraph 96.

97.     Defendants – and each of them – accepted the marketing, pecuniary, opportunity and other benefits of their affiliates' and vendors' telemarketing calls, anyway, and in doing so took the calculated risk that the benefit associated with such risk outweighed the chance that they might be held accountable or liable for such.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 97.

98.     Defendants' business model is to generate sales derived through telemarketing calls to consumers' phone numbers, regardless of whether the consumers asked not to be called.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 98.

99.     Defendants know that their do-not-call practices are deficient. They do not adequately train personnel or their vendors concerning do-not-call requirements, they do not coordinate do-not-call lists amongst telemarketing vendors/agents, and they know that they lack a

complete do-not-call list. This, despite years of litigation in multiple prior cases against Benefytt for TCPA violations.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 99.

100. The lead generators and telemarketers making calls to advertise Benefytt's products and services had each Defendant's express (or, at the very least, implied) authority to place the nonconsensual telemarketing calls at issue.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 100.

101. MDP knew and knows that Benefytt's telemarketing and other do-not-call practices are deficient, and it has control over Benefytt's practices and how it generates business for its benefit. Despite this, MDP has adopted Benefytt's bad acts: It made the business decision to continue to allow Benefytt to generate sales derived through telemarketing without adequate do-not-call and robocall practices in place.

**ANSWER**: MDP denies each and every allegation set forth in Paragraph 101.

102. Indeed, MDP and Daylight Beta directed Benefytt to take on tremendous amounts of debt—including a $207.5 million credit agreement[6]—which MDP and Daylight Beta knew would impair Benefytt's ability to pay a class judgment given the extent of TCPA violations at issue, and which Defendants continue to allow to occur post-purchase.

**ANSWER**: MDP denies each and every allegation set forth in Paragraph 102 and the footnote referenced therein.

103. It is and has been MDP's and Daylight Beta's plan from before they purchased Benefytt and its affiliates to steer Benefytt into bankruptcy if – after siphoning off any benefit from

---

[6] *See* Form 8-K (Aug. 21, 2020) (https://sec.report/Document/0001193125-20-226484/d926665d8k.htm).

the illegal telemarketing alleged herein – they could not obtain favorable settlements or dismissals for the telemarketing-related lawsuits against Benefytt and its affiliates.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 103.

104.    Benefytt—at the supervision, direction, and with the full knowledge of MDP and Daylight Beta—itself directly contracted with agents and lead generators to effectuate sales derived through the telemarketing at issue, despite full knowledge that callers have not adequately coordinated their IDNC lists with Benefytt, are making automated calls without consent, are not adequately identifying themselves or the sellers on whose behalf calls are being made, and are spoofing caller ID.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 104.

105.    Benefytt – as well as MDP and Daylight – have the right to audit, conduct site visits, and obtain call detail and other records from its vendors, but they fail to adequately exercise those contractual rights to ensure their do-not-call compliance. And Benefytt certainly knows that Benefytt is not coordinating do-not-call requests amongst each of these persons and entities.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 105.

106.    Benefytt directly participates in the telemarketing, including by emailing call recipients' application materials to complete through its MyBenefitsKeeper platform during the calls.   MDP and Daylight Beta know about this practice, directed that it continue despite knowledge of numerous complaints concerning Benefytt's telemarketing policies, practices and procedures, and continue to accept the benefits of such calls in spite of such.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 106.

107.    MDP, Daylight Beta, and Benefytt each maintain the right to control whether and the extent to which third parties that generate business on their behalf engage in telemarketing to do so, the manner and content of such telemarketing, in what particular geographical regions products are solicited, and can determine whether to discipline or terminate such third parties.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 107.

108.    MDP and Daylight Beta ratified the allegedly improper calling at issue: They purchased Benefytt at a premium knowing full-well that most of Benefytt's customers were gained through illegal telemarketing as alleged herein, and knowingly accepted the benefits of such nonconsensual telemarketing as part of the transaction, including for example monthly fees paid by Benefytt customers acquired through such illegal telemarketing.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 108.

109.    As part of a December 2018 regulatory settlement with multiple states' Departments of Insurance, Benefytt agreed to record the entirety of all telemarketing calls made by it or by any person on its behalf.  MDP, Daylight Beta, Benefytt, and TogetherHealth each knew about this settlement and its recording requirements, and had (and still have) the practical and contractual ability to review and audit those recordings as part of diligence and compliance efforts.  Defendants adequately reviewed the recordings and elected to proceed with telemarketing in spite of the obvious shortcomings alleged herein, or alternatively Defendants turned an intentional blind eye, consciously electing not to adequately review the recordings for the purpose of claiming ignorance.  Given the importance of telemarketing compliance, and in particular Benefytt's public and disgraceful history with improper telemarketing, any reasonable person in any Defendant's shoes would insist upon reviewing both those recordings and thoroughly investigating and vetting the telemarketing that generated hundreds of millions of dollars of profit for Benefytt.

**ANSWER**:  MDP states Plaintiff provides no citation to the settlement referenced in this Paragraph, which predates the indirect acquisition of Benefytt by funds managed by MDP, and on that basis MDP denies this allegation.  MDP admits that it is aware of a 2018 resolution involving Benefytt with certain state departments of insurance.  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 109.

110.    Indeed, two months before MDP purchased Benefytt, Benefytt was identified as the primary beneficiary of the largest illegal robocalling scheme ever prosecuted by the Federal

Communications Commission—over a billion prerecorded robocalls, none of which identified Benefytt, were generally targeted to reach senior citizens and telephone numbers on the National Do Not Call Registry that employed what the FCC called "malicious spoofing." *In re John C. Spiller, Notice of Apparent Liability*, 35 FCC Rcd. 5948, 5952-54, n.63 (June 9, 2020). That same date, eight attorneys general sued this robodialer under the TCPA for some of the precise violations this lawsuit alleges to have happened thereafter.

**ANSWER**: MDP states that the referenced authority, which involves a matter that predates the indirect acquisition of Benefytt by funds managed by MDP, speaks for itself and specifically denies this allegation and refers the Court to the cited authority for its full content. MDP further states that Plaintiff provides no citation to the lawsuit referenced in this Paragraph, and on that basis MDP denies this allegation. MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 110.

111. Aside from these high-profile complaints and investigations, at the time of MDP's purchase, Benefytt had received dozens of complaints concerning abusive telemarketing tactics prohibited by the TCPA, and which also violate the Florida Mini-TCPA that came into effect about two months before MDP's purchase of Benefytt.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 111.

112. MDP and Daylight Beta knew about Benefytt's horrendous – and in many cases criminal – history with telemarketing compliance, but went through with the purchase anyway, thus accepting responsibility for – and ratifying – Benefytt's prior bad acts concerning telemarketing alleged herein. Moreover, when it came into control of Benefytt and its subsidiaries and affiliates, MDP and Daylight Beta did not take actions sufficient to stop these illegal telemarketing calls.

**ANSWER**: MDP denies each and every allegation set forth in Paragraph 112.

113. To the contrary, after the purchase MDP and Daylight Beta continued to ratify the illegal telemarketing at issue here, by directing, overseeing, auditing such, and accepting its benefits despite actual (or constructive) knowledge that much of its co-defendants' new business was wrongfully obtained in violation of the Florida Mini-TCPA and the TCPA.

**ANSWER**: MDP denies each and every allegation set forth in Paragraph 113.

114. The executives and legal teams of MDP, Daylight Beta, Benefytt, and TogetherHealth were on actual notice that their practices were resulting in telemarketing to consumers who previously asked not to be called. Benefytt has been sued and received multiple complaints from consumers who said they continued to received telemarketing calls on its behalf despite a prior request to stop. *See, e.g.*, *Bilek v. National Congress of Employers, Inc*., No. 1:18-cv-03083 (N.D. Ill.); *Hossfeld v. Am. Fin. Sec. Life Ins. Co*., No. 0:19-cv-60597 (S.D. Fla. filed Mar. 6, 2019). Nonetheless, Defendants – and each of them – have continued to reap the benefit of these illegal calls, choosing profits (or the likelihood of profits after some period) over individual consumer privacy and legal compliance.

**ANSWER**: MDP admits that, at the time of the indirect acquisition of Benefytt by funds managed by MDP, it was aware that Benefytt was a defendant in certain litigation, including under the TCPA. MDP states that the referenced cases speak for themselves and specifically denies this allegation and refers the Court to the cited cases for their full content. MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 114.

115. Defendants' internal do-not-call list is missing millions of telephone numbers of persons who asked not to receive calls, because Defendants' policies, practices and procedures are insufficient.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 115.

116.    For example but not limitation, Benefytt and its co-defendants have at all relevant times had access to the internal do-not-call lists of vendors that made calls on their behalf, such as Health Advisors of America.  Plaintiff is on Health Advisors of America's internal do-not-call list as a result of a request to not be called he made during a telemarketing call he received on behalf of Benefytt.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth

or falsity of whether Plaintiff interacted with Health Advisors of America and is on its internal do-

not-call list.  MDP lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies

those allegations.  Answering further on behalf of MDP alone, MDP denies each and every

remaining allegation set forth in Paragraph 116.

117.    In addition to having contractual access and the practical ability to obtain their vendors' and subvendors' internal do-not-call lists, Defendants also have contractual and the practical ability to obtain telephone recordings from those making calls on their behalf. Defendants possess millions of such recordings made by Health Advisors of America. A substantial number of those recordings – and in particular the ones with short duration – contain demands from recipients that calls cease immediately.  Many of the recordings also include colorful expletives and threats of litigation and/or reporting to authorities.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis

denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every

remaining allegation set forth in Paragraph 117.

118.    Benefytt has refocused its business on selling Medicare-related products and services instead of criminally misleading consumers into buying horrible health insurance products, [*sic*] Plaintiff and any other consumer who asked not to be called by or on behalf of Benefytt before such refocusing would reasonably expect such request to be honored by Benefytt today.  This makes sense given that, Benefytt administers its internal do not call list, and does not differentiate among affiliates, and TogetherHealth's website expressly states that providing information to TogetherHealth will be treated as though it was provided to all affiliated companies such as Benefytt, and vice-versa.

**ANSWER**:  MDP admits that it is generally aware Benefytt pivoted its business to focus

on Medicare-related products.  MDP lacks knowledge or information sufficient to form a belief as

-33-

to the truth or falsity of the remaining allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 118.

119.     Despite that Defendants are in actual possession of Health Advisors of America's internal do-not-call list and call recordings that show more than a million telephone numbers that should be on their internal do-not-call list, Defendants have not adequately coordinated this type of vendor list with their own, thus permitting calls to phone numbers of persons who have already demanded not to receive calls from them. *In re TCPA, State Farm Order*, 20 FCC Rcd. 13664-13665, 13667-68, ¶¶ 1, 7 (2005); *United States v. Dish Network LLC*, 954 F.3d 970, 973 (7th Cir. 2020).

**ANSWER**:  MDP states that the cases cited herein consist of legal conclusions to which no response is required. To the extent a response is required MDP denies the allegations and refers this Court to the authorities cited for their full text. Answering further, and as to any non-legal conclusions contained in this Paragraph, MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, and as to any non-legal conclusions contained in this Paragraph, MDP denies each and every remaining allegation set forth in Paragraph 119.

120.     The Florida Mini-TCPA generally covers calls made by a telephone solicitor, i.e., "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." Fla.Stat. § 501.059(1)(i). Defendants are "telephone solicitors" because they either do business in Florida and made or caused to be made the telephonic sales calls at issue from the State of Florida.

**ANSWER**:  MDP states that Paragraph 120 consists of legal conclusions to which no response is required. To the extent a response is required MDP admits that Fla. Stat. § 501.059 generally applies to "telephone solicitors," but denies that it is a telephone solicitor under the statute. MDP otherwise denies the allegations and refers the Court to the cited statutory provision

for its full text.  Answering further, and as to any remaining non-legal conclusions contained in this Paragraph, MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, and as to any remaining non-legal conclusions contained in this Paragraph, MDP denies each and every remaining allegation set forth in Paragraph 120.

121.    Plaintiff and the Classes have been substantially damaged by Defendants' calls. Their privacy was improperly invaded, Defendants' calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. Defendants' calls were annoying and a nuisance, and wasted the time of Plaintiffs and the Class.  *See, e.g.*, *Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

**ANSWER**:  MDP states that Paragraph 121 consists of legal conclusions to which no response is required.  To the extent a response is required MDP denies the allegations stated therein.  Answering further, and as to any non-legal conclusions contained in this Paragraph, MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, and as to any non-legal conclusions contained in this Paragraph, MDP denies each and every remaining allegation set forth in Paragraph 121.

## CLASS ACTION ALLEGATIONS

122.    Plaintiff brings this action under Federal Rules of Civil Procedure 23(b)(3), on behalf of the following Class:

> **Internal DNC Class**. All persons who requested not to receive calls during any telemarketing call made to their telephone by or on behalf of any Defendant and/or who were logged in any Defendant's or its lead generator's records as having done so, and who subsequently received one or more additional call(s) by or on behalf of any Defendant on the phone number originally called.

Plaintiff alleges a subclass of such persons who received two or more such calls on their residential line within a twelve-month period.

**Autodialer Class**. All persons within the United States who received one or more telephone call on any phone line whatsoever, made for the purpose of trying to market Benefytt goods or services, where (A) the system employed to make such calls involved an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called, and (B) there existed at the time of the call no writing that (1) bears the called party's signature, (2) clearly authorizes the specific caller or any Defendant to use such technology to call, (3) specifies that such calls may be made to the particular phone number called, (4) and includes a clear and conspicuous statement that substantially states: (a) "By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called," and (b) informs the recipient that they are not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

**Identification Class**. All persons within the United States who received one or more telephone call on their residential, mobile or telephonic paging device, made for the purpose of trying to market Benefytt goods and services, where the first fifteen seconds of the call did not identify both: (a) the telemarketer's full name, and (b) Benefytt or the proper affiliate thereof.

**Spoofing Class**. All persons within the United States who received one or more telephone call on any phone line whatsoever, made for the purpose of trying to market Benefytt goods and services, where the telephone number used for caller ID was (a) not capable of receiving telephone calls, (b) upon callback did not connect the caller to the original telemarketer or Benefytt, or (c) both.

To the extent the Federal Trade Commission has not obtained this relief already, Plaintiff also brings this action on behalf of a class under Federal Rules of Civil Procedure 23(b)(2), seeking an injunction designed to wrench Defendants into compliance.

    **ANSWER**: MDP admits that Plaintiff seeks to bring claims on behalf of himself and the

above putative classes, and seeks certain injunctive relief, but MDP denies that there is any factual

or legal basis for the claim alleged, the relief sought or for classwide treatment. MDP denies each

and every remaining allegation set forth in Paragraph 122.

123.    Upon information and belief, there were more than 10,000 persons who received calls as identified in each of the foregoing Class definitions in 2021, alone.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 123.

124.    Common questions of law or fact exist as to all members of the Classes, which predominate over any questions solely affecting any individual member, including Plaintiff.  Such questions common to the Class include but are not limited to:

    a.    Whether, as a matter of policy, pattern and/or practice, lead generators and telemarketers selling Benefytt products or services disclosed their "true first and last names" or the "business on whose behalf he or she is soliciting" immediately upon making contact, Fla.Stat. § 501.059(2);

    b.    Whether Defendants' caused a telephone solicitor to call persons who previously asked not to be called on behalf of Defendants, Fla.Stat. § 501.059(5);

    c.    Whether the systems and messages used for calls advertising Benefytt goods and services selected or dialed telephone numbers, or played a recorded message, and whether those calls were made without the requisite consent; Fla.Stat. § 501.059(8)(a);

    d.    Whether calls advertising Benefytt goods and services were made using caller IDs that rang to a working telephone number to receive callbacks, or Defendants knowingly accept business derived from calls made using caller IDs that do not – but could – include the name and a working telephone number to receive callbacks, Fla.Stat. § 501.059(8)(b);

    e.    Whether Defendants or their (sub)vendors failed to institute procedures compliant with the TCPA's internal do-not-call regulations' minimum standards;

    f.    Whether each Defendant should be held liable for the calls; and

    g.    Damages, including whether the violations at issue were committed willfully or knowingly such that enhanced damages are appropriate.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 124.

125.    Plaintiff is a member of each Class, and his claims are typical of the claims of the other members of each Class.  The factual and legal bases of Defendants' liability to Plaintiff and the other Class members are the same: Defendants violated the Florida Mini-TCPA and the TCPA

by causing telemarketing calls to be made to the phone number of each Class member, that fall within the criteria for each Class.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 125.

126.    Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has no interests that might conflict with the interests of any Class.  Plaintiff is interested in pursuing his claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regard to the specific defendants and claims alleged herein.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 126.

127.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action [*sic*] would entail.  There are, on information and belief, thousands of class members in each Class, such that joinder of all members is impracticable.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 127.

128.    No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 128.

129.    Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making relief appropriate with respect to each Class as a whole.  Prosecution of separate actions by individual members of the Classes, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 129.

130.    The identity of each Class is, on information and belief, readily identifiable from Defendants' or their vendors' records.

**ANSWER**:  MDP denies each and every allegation set forth in Paragraph 130.

### COUNT I
### Internal Do-Not-Call – Florida Mini-TCPA

131.    Plaintiff incorporates all allegations herein.  Plaintiff brings this Count IV [*sic*] on behalf of the Internal DNC Class.

**ANSWER**:  MDP incorporates its answers to the foregoing allegations as if fully set forth herein.  Answering further, MDP admits that Plaintiff seeks relief set forth in this Paragraph on behalf of himself and his putative Internal DNC Class, but MDP denies that there is any factual or legal basis for the claim alleged, the relief sought or for classwide treatment.  MDP denies each and every remaining allegation set forth in Paragraph 131.

132.    The Florida Mini-TCPA prohibits calling the telephone numbers of persons who have requested not to receive calls on those numbers.  Fla.Stat. § 501.059(5).

**ANSWER**:  MDP states that Paragraph 132 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 132 and refers the Court to the cited statute for its full text.

133.    As a pattern and practice, Defendants or their (sub)vendors routinely initiate outbound calls to telephone numbers of persons who previously requested not to be called, for the purpose of soliciting a sale of any consumer goods or services.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 133.

134.    Defendants have access to data and documents and processes that would assist them in preventing calls to people who had requested not to receive such, but refuse to implement those tools, electing instead to blanket phone numbers nearly indiscriminately with telemarketing calls.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 134.

135.    The calls to Plaintiff and the others within this class either originated in Florida, and/or are the result of Defendants' conscious deliberation, and request that the calls be made from Florida.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 135.

136.    Defendants' noncompliance with the requirements described herein where [*sic*] willful and knowing.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 136.

WHEREFORE, Plaintiff individually and on behalf of a class, respectfully requests that the Court enter judgment against Defendants – and each of them – for:

A. Damages;
B. Injunctive relief;
C. Attorneys' fees and costs; and
D. Such other or further relief as the Court deems just and proper.

**ANSWER**:  MDP admits that Plaintiff seeks the relief set forth in this Paragraph on behalf of himself and a putative class, but MDP denies that there is any factual or legal basis for the claim alleged, the relief sought or for classwide treatment.  MDP denies each and every remaining allegation set forth in this Paragraph.

<u>**COUNT II**</u>
**Internal Do-Not-Call – Federal TCPA**

137.    Plaintiff incorporates all allegations herein.  Plaintiff brings this Count on behalf of the Internal DNC Class Subclass.

**ANSWER**:  MDP incorporates its answers to the foregoing allegations as if fully set forth herein.  Answering further, MDP admits that Plaintiff seeks relief set forth in this Paragraph on behalf of himself and his putative Internal DNC Subclass, but MDP denies that there is any factual or legal basis for the claim alleged, the relief sought or for classwide treatment.  MDP denies each and every remaining allegation set forth in Paragraph 137.

138.    The TCPA provides that no person or entity shall initiate any call for telemarketing purposes without first instituting procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity, which must meet certain minimum standards such as maintaining a written do-not-call policy available "upon demand," training personnel, recording and honoring do-not-call requests, and adequately identifying the caller/seller. 47 C.F.R. § 64.1200(d).

**ANSWER**:  MDP states that Paragraph 138 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 138 and refers the Court to the cited regulation for its full text.

139.    Defendants' policies, practices and procedures are deficient such that they permit:

      a.      Telemarketing calls to residential subscribers who – like Plaintiff – requested not to receive calls by or on behalf of Defendants;

      b.      Spoofing of caller ID during telemarketing calls; and

      c.      Calls where neither the caller nor the seller is adequately identified, and without information sufficient for recipient to contact the caller or seller to demand calls cease.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 139.

140.    Alternatively and additionally, Defendants have policies, practices and procedures in place, but they do not adhere to those and do not take adequate steps to require those making calls on their behalf comply.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis

denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 140.

141.    Each Defendant also fails to properly coordinate do-not-call requests amongst those making calls on its behalf; Defendants know that their internal do-not-call list (to the extent it exists) is incomplete.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 141.

142.    These shortcomings are the result of insufficient and intentionally shoddy policies and practices on the part of each Defendant, as well as a willful failure to follow and/or enforce any policies and practices in place.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 142.

143.    A cause of action accrues upon receipt of the second such call in a twelve-month period.  47 U.S.C. § 227(c)(5).

**ANSWER**:  MDP states that Paragraph 143 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 143 and refers this Court to the cited statute for its full text.

144.    To the extent that some of the calls to Plaintiff or other class members were made by (sub)vendors of a Defendant, the Defendant is liable for those calls, too.

**ANSWER**:  MDP states that Paragraph 144 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 144 and refers this Court to the TCPA and its regulations for their full text.  As to

any non-legal conclusions contained in this Paragraph, MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, and as to any non-legal conclusions contained in this Paragraph, MDP denies each and every remaining allegation set forth in Paragraph 144.

WHEREFORE, Plaintiff individually and on behalf of a class, respectfully requests that the Court enter judgment against Defendants – and each of them – for:

A. Damages;
B. Injunctive relief;
C. Attorneys' fees and costs; and
D. Such other or further relief as the Court deems just and proper.

**ANSWER**: MDP admits that Plaintiff seeks the relief set forth in this Paragraph on behalf of himself and a putative class, but MDP denies that there is any factual or legal basis for the claim alleged, the relief sought or for classwide treatment. MDP denies each and every remaining allegation set forth in this Paragraph.

## COUNT III
### Autodialer/Prerecorded Message – Florida Mini-TCPA

145. Plaintiff incorporates all allegations herein. Plaintiff brings this Count III on behalf of the Autodialer Class.

**ANSWER**: MDP incorporates its answers to the foregoing allegations as if fully set forth herein. Answering further, MDP admits that Plaintiff seeks relief set forth in this Paragraph on behalf of himself and his putative Autodialer Class, but MDP denies that there is any factual or legal basis for the claim alleged, the relief sought or for classwide treatment. MDP denies each and every remaining allegation set forth in Paragraph 145.

146. The Florida Mini-TCPA prohibits making or knowingly "allow[ing]" a telemarketing call to be made on one's behalf, where the call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed. Fla.Stat. § 501.059(8)(a).

**ANSWER**:  MDP states that the allegations in this Paragraph consist of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 146 and refers this Court to the cited statute for its full text.

147.    Most or all of the calls made by or on behalf of Defendants were made using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed.

**ANSWER**:  MDP states that Paragraph 147 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 147.  As to any non-legal conclusions contained in this Paragraph, MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, and as to any non-legal conclusions contained in this Paragraph, MDP denies each and every allegation set forth in Paragraph 147.

148.    Additionally, based upon Plaintiff's experience, the volume of complaints and Benefytt's disgraceful history of rampant TCPA violations, including the placement of one billion robocalls on its behalf none of which were consensual, no Defendant had proper consent for most or all of the calls.  Certainly, Defendants lacked Plaintiff's consent to call him.

**ANSWER**:  MDP states that Paragraph 148 consists of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 148.  As to any non-legal conclusions contained in this Paragraph, MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, and as to any non-legal conclusions contained in this Paragraph, MDP denies each and every allegation set forth in Paragraph 148.

149.    The calls to Plaintiff and the others within this class either originated in Florida, and/or are the result of Defendants' conscious deliberation, and request that the calls be made from Florida.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 149.

150.    Defendants' noncompliance with the requirements described herein where [*sic*] willful and knowing.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 150.

WHEREFORE, Plaintiff individually and on behalf of a class, respectfully requests that the Court enter judgment against Defendants – and each of them – for:

A. Damages;
B. Injunctive relief;
C. Attorneys' fees and costs; and
D. Such other or further relief as the Court deems just and proper.

**ANSWER**:  MDP admits that Plaintiff seeks the relief set forth in this Paragraph on behalf of himself and a putative class, but MDP denies that there is any factual or legal basis for the claim alleged, the relief sought or for classwide treatment.  MDP denies each and every remaining allegation set forth in this Paragraph.

## COUNT IV
### Spoofing – Florida Mini-TCPA

151.    Plaintiff incorporates all allegations herein. Plaintiff brings this Count II [*sic*] on behalf of the Spoofing Class.

**ANSWER**:  MDP incorporates its answers to the foregoing allegations as if fully set forth herein.  Answering further, MDP admits that Plaintiff seeks relief set forth in this Paragraph on

behalf of himself and his putative Spoofing Class, but MDP denies that there is any factual or legal basis for the claim alleged, the relief sought or for classwide treatment. MDP denies each and every remaining allegation set forth in Paragraph 151.

152. The Florida Mini-TCPA requires that the caller ID used for telemarketing calls be capable of receiving inbound telephone calls from call recipients. Fla.Stat. § 501.059(8)(b).

**ANSWER**: MDP states that the allegations in this Paragraph consist of a legal conclusion to which no response is required. To the extent an answer is required, MDP denies the allegations contained in Paragraph 152 and refers this Court to the cited statute for its full text.

153. Some or all of the calls made by or on behalf of Defendants did not include a caller ID that was so capable.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 153.

154. The Florida Mini-TCPA also generally requires that the caller ID used for telephonic sales calls be the actual originating telephone number. Fla.Stat. § 501.059(8)(b).

**ANSWER**: MDP states that the allegations in this Paragraph consist of a legal conclusion to which no response is required. To the extent an answer is required, MDP denies the allegations contained in Paragraph 154 and refers this Court to the cited statute for its full text.

155. Some or all of the calls made by or on behalf of Defendants for the purpose of soliciting a sale of any consumer goods or services did not include a caller ID that so complied.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 155.

156.    The Florida Mini-TCPA also requires that the caller ID for telemarketing calls include text that identifies the caller, if such service is available.  Fla.Stat. § 501.059(8)(b).

**ANSWER**:  MDP states that the allegations in this Paragraph consist of a legal conclusion to which no response is required.  To the extent an answer is required, MDP denies the allegations contained in Paragraph 156 and refers this Court to the cited statute for its full text.

157.    All or most of the calls made by or on behalf of Defendants for the purpose of soliciting a sale of any consumer goods or services failed to include text that identified the caller, even though such service was available to them.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 157.

158.    All or most of the calls made by or on behalf of Defendants for the purpose of soliciting a sale of any consumer goods or services failed to transmit caller ID information disclosing any Defendant or even a customer service telephone number for any Defendant that would be answered during regular business hours.  Fla.Stat. § 501.059(8)(b).

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 158.

159.    The calls to Plaintiff and the others within this class either originated in Florida, and/or are the result of Defendants' conscious deliberation, and request that the calls be made from Florida.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 159.

160.    Defendants' noncompliance with the requirements described herein were willful and knowing.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 160.

WHEREFORE, Plaintiff individually and on behalf of a class, respectfully requests that the Court enter judgment against Defendants – and each of them – for:

A. Damages;
B. Injunctive relief, to the extent not already secured by the FTC;
C. Attorneys' fees and costs; and
D. Such other or further relief as the Court deems just and proper.

**ANSWER**:  MDP admits that Plaintiff seeks relief set forth in this Paragraph on behalf of himself and a putative class, but MDP denies that there is any factual or legal basis for the claim alleged, the relief sought or for classwide treatment.  MDP denies each and every remaining allegation set forth in this Paragraph.

## COUNT V
## Failure to Identify – Florida Mini-TCPA

161.    Plaintiff incorporates all allegations herein.  This Count I [*sic*] is brought by Plaintiff on behalf of himself and the Identification Class.

**ANSWER**:  MDP incorporates its answers to the foregoing allegations as if fully set forth herein.  Answering further, MDP admits that Plaintiff seeks relief set forth in this Paragraph on behalf of himself and his putative Identification Class, but MDP denies that there is any factual or legal basis for the claim alleged, the relief sought or for classwide treatment.  MDP denies each and every remaining allegation set forth in Paragraph 161.

162.    The Florida Mini-TCPA requires that "[a]ny telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number shall identify himself or herself by his or her true first and last names and the business on

whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation." Fla.Stat. § 501.059(2).

**ANSWER**: MDP states that the allegations in this Paragraph consist of a legal conclusion to which no response is required. To the extent an answer is required, MDP denies the allegations contained in Paragraph 162 and refers this Court to the cited statute for its full text.

163. Defendants violated the Florida Mini-TCPA by making or causing to be made calls to Plaintiff and other class members for the purpose of soliciting a sale of goods or services, without the caller immediately identifying their true first and last names or any Defendant.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 163.

164. The calls to Plaintiff and the others within this class either originated in Florida, and/or are the result of Defendants' conscious deliberation, and request that the calls be made from Florida.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 164.

165. Plaintiff and the other class members did not request these calls.

**ANSWER**: MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations. Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 165.

166. Plaintiff and the other class members did not have a prior or existing business relationship with Defendants.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 166.

167.    Defendants' noncompliance with the requirements described herein were willful and knowing.

**ANSWER**:  MDP lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph made against the co-defendants, and on that basis denies those allegations.  Answering further on behalf of MDP alone, MDP denies each and every remaining allegation set forth in Paragraph 167.

WHEREFORE, Plaintiff individually and on behalf of a class, respectfully requests that the Court enter judgment against Defendants – and each of them – for:

A. Damages;
B. Injunctive relief, to the extent not already secured by the FTC;
C. Attorneys' fees and costs, as permitted by law; and
D. Such other or further relief as the Court deems just and proper.

**ANSWER**:  MDP admits that Plaintiff seeks relief set forth in this Paragraph on behalf of himself and a putative class, but MDP denies that there is any factual or legal basis for the claim alleged, the relief sought or for classwide treatment.  MDP denies each and every remaining allegation set forth in this Paragraph.

**COUNT VI**
**Fraudulent Transfer**

168.    Plaintiff incorporates all allegations herein.

**ANSWER**:  Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time.  MDP reserves the right to answer this allegation should the stay be lifted.  MDP notes, however, that this claim has been released

pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023). Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 168.

169. This Count is brought by Plaintiff on behalf of himself and all persons in each of the Classes alleged herein.

**ANSWER**: Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time. MDP reserves the right to answer this allegation should the stay be lifted. MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023). Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 169.

170. MDP and Daylight Beta purchased Benefytt and its affiliates with full knowledge of Benefytt's liabilities, including class TCPA litigation such as *Bilek v. National Congress of Employers, Inc.*, Case no 1:18-cv-3083 (N.D.Ill.) and others.

**ANSWER**: Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time. MDP reserves the right to answer this allegation should the stay be lifted. MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023). Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 170.

171. MDP and Daylight Beta knew that the claims raised in *Bilek* were meritorious and would result in a large judgment that Benefytt could not withstand given its value, but purchased Benefytt and its affiliates through Daylight Beta, anyway.

**ANSWER**: Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time. MDP reserves the right to answer this allegation should the stay be lifted. MDP notes, however, that this claim has been released

pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023).  Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 171.

172.    Benefytt, TogetherHealth, MDP and Daylight Beta entered into the purchase transaction without MDP and Daylight Beta paying a reasonably equivalent value given Benefytt's past, present and future liabilities arising from *Bilek* and other TCPA and telemarketing lawsuits.

**ANSWER**:  Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time.  MDP reserves the right to answer this allegation should the stay be lifted.  MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023).  Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 172.

173.    MDP and Daylight Beta leveraged Benefytt immediately upon consummation of the transaction, by (for example) having Benefytt and its affiliates take on enormous debt (receiving funds insufficient to pay TCPA creditors), firing a substantial number of Benefytt's workforce, and using the proceeds for purposes other than to ensure the future profitability and viability of Benefytt and its affiliates.

**ANSWER**:  Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time.  MDP reserves the right to answer this allegation should the stay be lifted.  MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023).  Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 173.

174.    The classes in *Bilek*, *Hossfeld* and *Moore* were not compensated as part of the transaction, and the transaction and defendants' actions and omissions thereafter left Benefytt without funds sufficient to pay a judgment. After the above debts were incurred there was little or no money left to pay any sort of judgment

**ANSWER**: Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time. MDP reserves the right to answer this allegation should the stay be lifted. MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023). Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 174.

175. Before and after the purchase, all defendants knew that Benefytt's former – and now disgraced – CEO Gavin Southwell and Vice President of Sales Amy Brady were orchestrating a massive illegal telemarketing scheme rife with fraud and TCPA violations, for the benefit of Benefytt. All defendants kept Southwell and Brady in place after the transaction, so that they could continue with these illegal activities.

**ANSWER**: Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time. MDP reserves the right to answer this allegation should the stay be lifted. MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023). Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 175.

176. Benefytt and Daylight Beta entered into the Benefytt purchase transaction intending to incur additional liabilities beyond Benefytt's ability to pay, including but not limited to the liabilities arising from *Bilek* and the illegal telemarketing alleged herein.

**ANSWER**: Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time. MDP reserves the right to answer this allegation should the stay be lifted. MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023). Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 176.

177.     MDP nevertheless purchased Benefytt, with the plan to either: (a) settle Benefytt's existing litigation for next to nothing, or (b) run the company into bankruptcy.

**ANSWER**:  Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time.  MDP reserves the right to answer this allegation should the stay be lifted.  MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023).  Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 177.

178.     MDP created Daylight Beta for the purpose of carrying out this scheme, and Daylight Beta continues to exist for such purpose.  Daylight Beta also exists for the express purpose of trying to insulate MDP from liability arising from Benefytt and its affiliates, while at the same time permitting MDP and Daylight Beta to profit therefrom.

**ANSWER**:  Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time.  MDP reserves the right to answer this allegation should the stay be lifted.  MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023).  Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 178.

179.     MDP and Daylight Beta's purchase of Benefytt was designed to hinder and delay any judgment in the *Bilek* case.

**ANSWER**:  Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time.  MDP reserves the right to answer this allegation should the stay be lifted.  MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023).  Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 179.

180. Such hinderance and delay was each of the defendant's purpose, so that MDP and its affiliates could extract whatever value they could before eventually running Benefytt into bankruptcy and/or insolvency. Benefytt and its affiliates' benefit was that they could cash out while avoiding having to pay any judgment.

**ANSWER**: Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time. MDP reserves the right to answer this allegation should the stay be lifted. MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023). Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 180.

181. Plaintiff Wes Newman is a class member in the *Bilek* action

**ANSWER**: Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time. MDP reserves the right to answer this allegation should the stay be lifted. MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023). Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 181.

182. MDP and Daylight Beta were insiders as to their purchase of Benefytt and its affiliates, because they were aware of all material facts concerning existing TCPA litigation against it, including *Bilek* and other litigation, and because they kept Gavin Southwell and Amy Brady (among others) in charge of operations at Benefytt and its affilaites [*sic*].

**ANSWER**: Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time. MDP reserves the right to answer this allegation should the stay be lifted. MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023). Should an answer be

required nonetheless, MDP denies each and every allegation stated in Paragraph 182.

183.   MDP and Daylight Beta purchased Benefytt nonwasting such inside knowledge about Benefytt's TCPA liabilities.

**ANSWER**:   Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time.  MDP reserves the right to answer this allegation should the stay be lifted.  MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023).  Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 183.

184.   MDP and Daylight Beta knew that Benefytt's TCPA liabilities exceeded its value, but purchased Benefytt anyway, for the purpose of trying to quickly extract as much money and value as they could before those liabilities became due.  MDP and Daylight Beta's plans thereafter were to have Benefytt go insolvent and/or declare bankruptcy (which was all parties' plan all along).

**ANSWER**:   Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time.  MDP reserves the right to answer this allegation should the stay be lifted.  MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023).  Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 184.

185.   Plaintiff and the class have been substantially damaged by Defendants' fraudulent transfer as alleged herein.

**ANSWER**:   Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time.  MDP reserves the right to answer this allegation should the stay be lifted.  MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case

No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023). Should an answer be required nonetheless, MDP denies each and every allegation stated in Paragraph 185.

WHEREFORE, Plaintiff seeks damages, injunctive relief and the maximum relief provided by law and equity on his behalf and on behalf of all class members, including but not limited to:[7]

a. TCPA money damages against all Defendants, including but not limited to MDP, Daylight Beta, TogetherHealth and Benefytt;

b. Attachment of MDP and Daylight Beta's assets sufficient to satisfy any judgment against Benefytt arising from this action, *Bilek*; *Hossfeld v. Health Insurance Innovations, Inc*. 19-cv-60597 (S.D. Fla.), *Moore v.American Service Insurance Agency*, No. 20-cv-06206 (N.D. Ill.) and any other similar TCPA actions;

c. An injunction against further disposition of any asset of any part of Benefytt or MDP or Daylight Beta, and against MDP entering into similarly transfers or transactions in the future;

d. Appointment of a receiver to take charge of Benefytt, TogetherHealth, MDP and Daylight Beta to ensure that assets are not improperly divested, such as to disadvantage creditors such as Plaintiff and the classes;

e. Attorney's fees and costs; and

f. Any other relief available under law, equity or otherwise.

**<u>ANSWER</u>**: Pursuant to this Court's August 31, 2023 Order, this Count is stayed. Accordingly, MDP does not answer this Count at this time. MDP reserves the right to answer this allegation should the stay be lifted. MDP notes, however, that this claim has been released pursuant to the chapter 11 plan and Confirmation Order, *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court, Aug. 30, 2023). Should an answer be required nonetheless, MDP denies each and every allegation stated in this Paragraph.

---

[7] On June 30, 2023, Plaintiff amended the relief stated in this Paragraph. (Dkt. 108.)

## <u>AFFIRMATIVE & OTHER DEFENSES</u>

Without assuming the burden of proof where it otherwise lies with Plaintiff, MDP hereby asserts the following affirmative and other defenses to Plaintiff's Complaint.

### FIRST DEFENSE
### (Res Judicata / Claim Preclusion)

Plaintiff's fraudulent transfer claim is barred as a result of the confirmation order and bankruptcy plan approved on August 30, 2023 in *In re Benefytt Technologies, Inc.*, Case No. 23-90566, Dkt. 481 (S.D. Tex. Bankruptcy Court).

### SECOND DEFENSE
### (Prior Express Consent)

Plaintiff's claims are barred because, on information and belief, Plaintiff provided prior express consent and prior express written consent to receive the calls at issue.

### THIRD DEFENSE
### (Arbitration)

Upon information and belief, Plaintiff's and the putative class members' claims may be subject to an arbitration provision. MDP's investigation into this affirmative defense is ongoing, and will raise the applicability of an arbitration clause if, and as soon as, it is able.

### FOURTH DEFENSE
### (No Prerecorded Message or Covered Technology)

Plaintiff's claims concerning the alleged receipt of automated or prerecorded calls are barred to the extent that (i) no covered technology was used and/or (ii) no prerecorded message or voice actually played.

### FIFTH DEFENSE
### (Residential Numbers)

Plaintiff's TCPA claim and FTSA claims are barred to the extent such claims are limited to residential numbers and Plaintiff's phone number does not qualify as a residential number.

### SIXTH DEFENSE
### (Statute of Limitations)

Plaintiff's TCPA claim is barred as to MDP to the extent he seeks to recover for calls that occurred prior to the indirect acquisition of Benefytt in 2020 by funds managed by MDP. Plaintiff's TCPA claim is also barred to the extent he seeks to recover for calls that occurred more than four years prior to the filing of the Complaint. Plaintiff's FTSA claims are barred to the extent he seeks to recover for calls predating the July 1, 2021 effective date of the private right of action.

### SEVENTH DEFENSE
### (Safe Harbor)

Plaintiff's TCPA claim fails because, on information and belief, reasonable practices and procedures were implemented to prevent telephone solicitations in violation of the TCPA and FCC's internal do-not-call regulations.

### EIGHTH DEFENSE
### (No Do Not Call Request)

Plaintiff's do-not-call claims fail because, on information and belief, Plaintiff did not convey a do-not-call request.

### NINTH DEFENSE
### (No Private Right of Action)

Plaintiff's TCPA claim fails because there is no private right of action to pursue claims under 47 C.F.R. § 64.1200(d).

### TENTH DEFENSE
### (Established Business Relationship)

Plaintiff's do-not-call claims and claim pursuant to Fla. Stat. § 501.059(2) and (8)(a) fail because, on information and belief, Plaintiff had an established business relationship with one or more defendants.

## ELEVENTH DEFENSE
### (Do Not Call Compliance)

Plaintiff's do-not-call claims fail because, on information and belief, practices and procedures meeting the requirements of 47 C.F.R. § 64.1200(d) were implemented.

## TWELFTH DEFENSE
### (Preemption)

Plaintiff's FTSA claims are preempted by the TCPA and/or other applicable federal laws and regulations.

## THIRTEENTH DEFENSE
### (No Unsolicited Telephonic Sales Call)

Plaintiff's claims pursuant to Fla. Stat. §§ 501.059(2), (8)(a) fail because, on information and belief, Plaintiff did not receive any calls meeting the definition of an unsolicited telephonic sales call.

## FOURTEENTH DEFENSE
### (Caller Identification)

Plaintiff's claim under Fla. Stat. § 501.059(8)(b) is barred to the extent that the carrier did not make available certain caller identification information to Plaintiff.

## FIFTEENTH DEFENSE
### (Substantial Compliance & Good Faith)

Plaintiff's claims are barred to the extent that any defendant substantially complied with the TCPA and FTSA. Further, Plaintiff's claims are barred to the extent any defendant acted in good faith and had reasonable grounds for reasonably relying upon and believing that it acted properly with respect to the communications at issue.

## SIXTEENTH DEFENSE
### (No Direct or Vicarious Liability)

Plaintiff's claims are barred because MDP did not place the calls at issue, and thus cannot be directly liable, and is not, and cannot be, vicariously liable (or liable on any other theory, including of agency or alter ego, to the extent available) for the calls at issue. Further, Plaintiff's FTSA claims are barred to the extent that the FTSA does not permit vicarious or agency liability.

## SEVENTEENTH DEFENSE
### (No Telephone Solicitor)

Plaintiff's FTSA claims are barred because MDP does not meet the definition of a telephone solicitor.

## EIGHTEENTH DEFENSE
### (No Florida Calls)

Plaintiff's FTSA claims are barred to the extent that none of the calls at issue were conducted from a location in Florida or were received by Plaintiff in Florida.

## NINETEENTH DEFENSE
### (Violation of the Commerce Clause)

Plaintiff's FTSA claims are barred because the provisions of the FTSA at hand violate the Commerce Clause and/or Dormant Commerce Clause of the United States Constitution.

## TWENTIETH DEFENSE
### (Violation of the Fifth, Eighth and Fourteenth Amendments)

The statutory damages provisions of the TCPA and FTSA, respectively, violate the Due Process Clause under the Fifth and Fourteenth Amendments to the United States Constitution, as well as the Eighth Amendment to the United States Constitution, and the Florida state counterparts. If a class were to be certified and liability were found, the statutory damages award would be grossly disproportionate to any "harm" suffered by the class members.

**TWENTY-FIRST DEFENSE**
**(Violation of the First Amendment)**

The TCPA and FTSA violate the First Amendment of the United States Constitution and Florida's state counterpart because it places unconstitutional restrictions on free speech. The provisions at issue are thus unenforceable.

**TWENTY-SECOND DEFENSE**
**(*De Minimis Harm*)**

Plaintiff's alleged harm, if any, was *de minimis*, and is thus unrecoverable.

**TWENTY-THIRD DEFENSE**
**(Invited the Harm, Unclean Hands, Waiver, and Other Equitable Limitations)**

Plaintiff's claims are barred by the doctrines of *volenti non fit injuria*, unclean hands, estoppel, laches, waiver, failure to mitigate, consent, and other equitable limitations, particularly to the extent Plaintiff intentionally invited the harm for which he now complains, delayed in bringing his claim, failed to mitigate damages, and/or contributed to the receipt of the calls at issue.

**TWENTY-FOURTH DEFENSE**
**(No Attorneys' Fees)**

Plaintiff is not entitled to attorneys' fees under either the TCPA or FTSA, and thus any request for the same should be barred.

**TWENTY-FIFTH DEFENSE**
**(Class Defenses)**

MDP opposes class certification and disputes the propriety of class treatment. If the Court certifies a class in this case over MDP's objections, MDP asserts the defenses set forth herein against each and every member of the certified class.

**TWENTY-SIXTH DEFENSE**
**(Reservation of Rights)**

MDP specifically reserves the right to add additional affirmative defenses.

## JURY DEMAND

MDP demands a trial by jury for all issues so triable.

**WHEREFORE**, MDP prays for judgment as follows:

1. Dismissal of the operative Complaint in its entirety with prejudice;

2. That Plaintiff take nothing by the operative Complaint and that judgment be entered against Plaintiff and in favor of MDP;

3. That MDP be awarded its costs of suit and reasonable attorneys' fees; and

4. That the Court award MDP such other and further relief as the Court deems just and appropriate.

DATED:  September 14, 2023              Respectfully submitted,

/s/ Mark S. Eisen

Mark S. Eisen
meisen@beneschlaw.com
Paul A. Del Aguila
pdelaguila@beneschlaw.com
Jamie N. Ward
jward@beneschlaw.com
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 S. Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192

*Counsel for Madison Dearborn Partners, LLC*